IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MUSTANG LINE CONTRACTORS, INC., | ) | |
| | ) | No. 04-0901C |
| Plaintiff, | ) | (Judge Lettow) |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, Acting through | ) | |
| the Bonneville Power Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPLY

1. Plaintiff denies defendant's affirmative defenses stated in paragraphs 21, 22 and 23.

2. With respect to paragraph 1 of the Counterclaims, plaintiff admits that this court has jurisdiction of all claims.

3. Plaintiff admits paragraphs 2, 3, and 4 of defendant's counterclaim allegations.

4. With respect to paragraph 5, plaintiff admits that it told BPA that it relied on the 1953 drawing that BPA distributed at the pre-proposal conference to determine the approximate amount of rock on the project and that the percentages of rock stated in paragraph 5 were asserted by plaintiff.

5. Plaintiff denies paragraph 6 of defendant's counterclaim and states affirmatively that it used the BPA drawing to determine the amount of rock that it anticipated encountering and that it used its production data from its previous project to determine approximately what plaintiff's production cost and production time would be.

6. Plaintiff denies paragraph 7 of defendant's counterclaim and states affirmatively that it used the BPA drawing to determine the amount of rock that it anticipated encountering and that it used its production data from its previous project to determine approximately what plaintiff's production cost and production time would be.

7. Plaintiff denies paragraph 8 of defendant's counterclaim, and states affirmatively, prior to the submission of the December 23, 2002 claim, plaintiff met with defendant on December 19, 2002. During that meeting, in an attempt to resolve this matter with defendant's unreasonable representatives, plaintiff made sundry settlement concessions that were included in its December 23, 2002 claim. Though plaintiff explained how it interpreted the 1953 drawing to show that there was 12.5% rock on the project, in hope of obtaining a settlement, plaintiff decided to agree with the defendant's representatives' contention that the drawing indicated 50% rock and 50% common material. Mustang reserves the right to re-estimate these percentages and return to the 12.5% rock figure in light of defendant's rejection of their offer and in light of defendant's position in this matter.

8. With respect to paragraph 9 of defendant's counterclaim, once again, after the meeting that occurred on December 19, 2002, plaintiff reduced its claim in attempt to achieve early settlement, only to have that action serve as the subject of this specious counterclaim. Plaintiff's outside rentals and supplies were based on the actual blasting costs. These costs were well documented. Plaintiff reduced the percentage of actual costs that it was claiming, consistent with its other

negotiated concessions.

9. Plaintiff admits paragraph 10 of defendant's counterclaim.

10. Plaintiff admits paragraph 11 of defendant's counterclaim.

11. Plaintiff admits paragraph 12 of defendant's counterclaim.

12. Plaintiff admits paragraph 13 of defendants counterclaim, but states affirmatively that during the September 17, 2002, meeting, Mustang explained that the proposal submitted on September 3, 2002, included four scenarios for changing out the steel. These scenarios were: :(1) structures on the ground; (2) structures set, with conductor, without using big cranes, (3) structures set without conductor installed, with big cranes; and (4) structures set, with conductor, with big cranes. Each scenario was priced separately and the total was $206,096.78. During the September 17, 2002, meeting with defendant, the four original scenarios were, by mutual agreement, reduced to three scenarios, which were priced at $200,096.33. Plaintiff submitted the revised proposal to defendant in Serial Letter 85, dated September 19, 2002. Defendant incorporated these changes into Contract Amendment Number 11 dated September 24, 2002.

With respect to Work Orders 11-17, plaintiff first sent its claim to defendant on September 19, 2002 in the amount of $53,685.32. After negotiations with defendant's representatives, plaintiff resubmitted the claim in the amount of $49,822. Defendant accepted that amount and incorporated it into Contract Amendment 21 dated March 5, 2003.

13. Plaintiff admits paragraph 14 of defendant's counterclaim.

14. Plaintiff admits to the notification alleged in paragraph 15 of defendant's

counterclaim, but denies that foreman costs constituted “double billing.” The foreman billing in work orders 11 thru 17 was incurred during the original contract time period. The Extended Overheard cost was for the period after October 1, 2002 - the extended contract period. Thus, the foreman billings submitted were for two different time periods.

15. Plaintiff admits paragraph 16 of defendant's counterclaim.

16. Plaintiff admits paragraph 17 of defendant's counterclaim.

17. Plaintiff admits paragraph 18 of defendant's counterclaim.

18. Plaintiff admits that the meeting referenced in paragraph 19 took place, but denies the remainder of the paragraph and states that plaintiff explained to the defendant's representatives that plaintiff's cost for the 22 day delay was $101,237.91. Previous proposed cost for the assumed 30 day delay had been estimated.

19. Plaintiff admits paragraph 20 of defendant's counterclaim.

20. Plaintiff denies paragraph 21 of defendant's counterclaim.

21. With respect to the allegations in 22a of defendant's counterclaim, plaintiff states that defendant's auditors, audited plaintiff's 30 day prospective proposal and not plaintiff's actual cost incurred during the 22 day contract extension. The audit was invalid.

22. With respect to the allegations in paragraph 22b, BPA's analysis of the work done by the environmental subcontractors ignores the environmental subcontractor's function. Plaintiff employed the environmental subcontractors to, among other things, repair right-of-way damage, negotiate settlements with landowners for

right-of-way damage, and to prepare the final environmental documents. None of these tasks could be completed during the contract extension period, because both plaintiff and defendant were still using the right-of-way. The documents submitted in the environmental subcontractor section of plaintiff's Steel Claim show the timing and reason for all payments made to the environmental subcontractor, both during and after the contract period. These documents clearly show the effect on Mustang's environmental subcontractor costs.

23. With respect to the allegations in paragraph 22c, defendant's audit for the standby equipment cost was made after contract completion. It is true that some of the equipment on standby was not used. But, plaintiff did not know that which pieces of equipment it would need and which ones it would not need until it was determined, among other things, that pieces of recently erected towers would not have to be removed because of defective steel. See the explanation in paragraph 12, above.

24. Plaintiff admits paragraph 23 of defendant's counterclaim.

25. Plaintiff denies paragraph 24 of defendant's counterclaim. Plaintiff has responded to the double billing allegations in its paragraph 14 above. The remainder of the allegations would not have been made if defendant's representative had taken the time to study the comprehensive back up provided for Work Orders 56 and 57.

26. With respect to the allegations contained in paragraph 25, plaintiff admits that defendant wrongfully deducted $23,143 for its own alleged cost and wrongfully underpaid plaintiff for Work Orders 56 and 57.

27. Plaintiff denies all of the misnumbered paragraphs in the First Counterclaim and

the Second Counterclaim (19, 20, 21, 22, 23, 24)

Wherefore, plaintiff prays that the Counterclaims be dismissed with prejudice and without costs to the plaintiff and that plaintiff be awarded its costs and fees pursuant to the Equal Access to Justice Act for defending this counterclaim.

DATED this ____ day of October, 2004

______________________________
Joseph A. Yazbeck, Jr.
YAZBECK, CLORAN & HANSON, LLC
1300 SW 5TH Ave., Suite 2750
Portland, OR 97201
Telephone No: (503) 227-1428
Facsimile No: (503) 227-4866
jay@yazbeckhanson.com
Attorney of Record for Plaintiff