No. 04-901C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MUSTANG LINE CONTRACTORS, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRIAN M. SIMKIN
Assistant Director

LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202)353-7995
Facsimile: (202)514-8624

January 18, 2005

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENTOF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-7

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. This Court Lacks Jurisdiction To Entertain Mustang's Complaint Because Mustang Failed To Comply With The CDA's Certification Requirement . . . 5-7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

## FEDERAL CASES

Case | Page(s)

Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988) . . . . . 7

Fidelity Construction Co. v. United States, 700 F.2d 1379 (Fed. Cir. 1983) . . . . . 4,5,6

Fischbach & Moore International Corp. v. Christopher, 987 F.2d 759 (1993) . . . . . 6

Hamza v. United States, 31 Fed. Cl. 315 (1994) . . . . . 6

Johns-Manville Corp. v. United States, 893 F.2d 324 (Fed. Cir. 1989) . . . . . 7-8

Medina Construction, Ltd. v. United States, 43 Fed. Cl. 537 (1999) . . . . . 8

Morris v. United States, 33 Fed. Cl. 733 (1995) . . . . . 4

Newport News Shipbuilding v. Garrett, 6 F.3d 1547 (Fed. Cir. 1993) . . . . . 6

Pevar v. United States, 32 Fed. Cl. 822, 825 (1995) . . . . . 6

Reynolds v. Army and Air Force Exch. Service, 846 F.2d 746 (Fed. Cir. 1988) . . . . . 4

Scan-Tech Security LP v. United States, 46 Fed. Cl. 326 (2000) . . . . . 5,6

United States v. King, 395 U.S. 1 (1969) . . . . . 5

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . 4

United States v. Sherwood, 312 U.S. 584 (1941) . . . . . 4

United States v. Testan, 424 U.S. 392 (1976) . . . . . 4,5

W.M. Schlosser Co. v. United States, 705 F.2d 1336 (Fed. Cir. 1983) . . . . . 5,6

## FEDERAL STATUTES

16 U.S.C. §§ 832-832m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

41 U.S.C. §§ 601 - 613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

48 C.F.R. § 33.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

## COURT RULES

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MUSTANG LINE CONTRACTORS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-901C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to RCFC 12(b)(1), the United States respectfully requests that the Court dismiss this case for lack of jurisdiction. In support of this motion, we rely upon the pleadings, the following memorandum, and the attached appendix.

DEFENDANT'S MEMORANDUM OF LAW

STATEMENT OF THE CASE

This case arises out of a contract between Bonneville Power Administration ("BPA"), a subagency of the Department of Energy ("DOE"), and the plaintiff, Mustang Line Contractors, Inc. ("Mustang"). In this action, Mustang alleges that it is entitled to $362,603.00 due to differing site conditions and additional work under the contract. Mustang, however, has never submitted a certified claim for this or any other amount to a contracting officer for a final decision, as required by the Contract Disputes Act ("CDA") of 1978 (41 U.S.C. §§ 601-613). Because compliance with that statute is a condition of this Court's exercise of jurisdiction, the complaint must be dismissed.

STATEMENT OF THE FACTS

On April 29, 2002, BPA awarded a firm, fixed price contract to Mustang for $4,182,675.57 with a completion date of October 1, 2002, to rebuild the Satiam-Bethel Tap Double Circuit 230-kV Transmission Line. Complaint ("Compl.") ¶ 2.

On August 28, 2002, BPA issued contract amendment number 8 due to its discovery that some of the steel furnished to construct new towers was defective and needed to be replaced.

Appendix ("App.") at 23. In amendment 8, BPA agreed that Mustang was entitled to an equitable adjustment for changing the defective steel and asked Mustang to submit a proposal of costs by September 6, 2002. App. at 1.

On September 3, 2002, Mustang provided BPA with a proposal for reimbursement of additional costs pursuant to amendment 8 based upon the assumption that the contract completion would be delayed by 30 days. App. at 1-16. The proposal was in the amount of $571,462.75, including $206,686.78 for direct labor and equipment costs, App. at 2; $55,948.25 for work orders 11 through 17, App. at 1; $101,425.57 for extended field overhead costs, App. at 2; $54,145.90 for environmental subcontractor costs, App. at 3; $148,992.05 for stand-by equipment costs, App. at 4; and $4,624.20 for ROW compaction costs, Id. Mustang did not certify this claim or include any language remotely resembling a certification.

On September 19, 2002, after meeting with BPA representatives, Mustang revised its September 3, 2002 request for payment of its direct costs to $200,096.33 and submitted a revised price proposal for work orders 11 through 17 in the amount of $53,685.32. App. at 17-21. Mustang did not certify this claim or include any language remotely resembling a certification.

BPA issued contract amendment 11 on September 24, 2002, in the amount of $200,096.33, as payment for Mustang's direct costs included in its September 19, 2002 letter. App. at 22-23.

On October 25, 2002, Mustang submitted a letter to the BPA Contracting Officer, requesting $278,820.53 in additional costs, unrelated to amendment 8, because it allegedly encountered differing site conditions in the form of more rock than it had originally anticipated. App. at 24-30. Mustang did not certify this claim or include any language remotely resembling a certification.

On December 23, 2002, after discussions with BPA, Mustang submitted another letter to the BPA contracting officer with the intent of replacing the October 24, 2002 letter regarding the differing site conditions. App. at 31-50. Mustang's December letter requested $130,357.17 in

additional costs due to the alleged differing site conditions. App. at 37. Again, Mustang did not certify this claim.

On March 5, 2003, BPA issued contract amendment 21 in the amount of $49,822.00 for work orders 11 through 17. App. at 51-52.

On May 27, 2003, the BPA contracting officer responded to Mustang's December letter, denying Mustang's requests for equitable adjustment related to differing site conditions due to unanticipated rock. App. at 53-59.

BPA then audited Mustang's remaining September 3, 2002 proposed costs related to amendment 8, and provided the results to Mustang on September 2, 2003. App. 60-74. The contracting officer, based upon the results of the audit, determined that Mustang was entitled to $129,331.00. Id.

On October 27 and 29, 2003, BPA completed an audit on work orders 56 and 57. App at 75-78. The auditors found that Mustang was entitled to only $24,785.00 of the $60,865.56 Mustang claimed it incurred for these work orders. Id.

In response, Mustang submitted a letter on September 18, 2003, stating "[p]lease consider this a Formal Claim under DISPUTES RESOLUTION PROCESS (21-3)." App. at 79-80. The amount requested in this letter was $369,693.28. Id. Again, Mustang did not certify this amount as required by the CDA.

On November 6, 2003, the BPA contracting officer, relying upon the audit results, determined that Mustang was entitled to $152,474. App. at 81-93. The contracting officer then deducted $23,143.00 for amounts Mustang owed to BPA. App. at 92. Thus, the contracting officer determined, as the auditors had, that Mustang was entitled to $129,331.00. Id.

Finally, on January 16, 2004, Mustang sent a letter it referred to as an "'unofficial' communication," offering comments on the audit results and other supporting documentation.

App. at 94-106. This letter did not contain a request for a specific amount of money and was not certified.

Communications between the two parties deteriorated and Mustang filed this suit on May 21, 2004.

## STATEMENT OF THE ISSUE

Whether this Court lacks jurisdiction to entertain the complaint because Mustang failed to submit certified claims to a contracting officer, as required by the Contract Disputes Act of 1978 (41 U.S.C. §§ 601-613).

## ARGUMENT

### I. Standard of Review

When reviewing a RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must construe all the facts alleged in the complaint in favor of the plaintiff. Morris v. United States, 33 Fed. Cl. 733, 741 (1995) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). The Court also must presume all factual allegations to be true and correct. Id. at 741-42 (citing Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988)). However, when a defendant challenges the facts upon which jurisdiction is premised, the plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence. Id. The Court then "may look outside the complaint and receive evidence for the purpose of resolving the jurisdictional issue of fact." Morris, 33 Fed. Cl. at 742 (citing Mainer v. United States, 31 Fed. Cl. 410, 413-14 (1994); Camelus Development Corp. v. United States, 31 Fed. Cl. 399, 405 (1994)).

Absent congressional consent to entertain a claim against the United States, this Court lacks authority to grant relief. United States v. Testan, 424 U.S. 392, 399 (1976); United States v. Sherwood, 312 U.S. 584, 586 (1941). Such consent, including the consent to be sued in this Court, is a waiver of the Government's traditional immunity and, as such, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Fidelity Construction

Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). It may not be implied. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969).

## II. This Court Lacks Jurisdiction To Entertain Mustang's Complaint Because Mustang Failed To Comply With The CDA's Certification Requirement

Although, generally speaking, Congress has consented to the United States being sued in this Court for claims arising out of contracts with the Government, 28 U.S.C. § 1491(a), it has established conditions upon that consent in cases involving contracts with an executive agency for the procurement of: property (other than real property in being); services; construction, alteration, or repair of real property; and the disposal of personal property.[1] 41 U.S.C. §§ 601 - 613. Contractors must adhere to the procedural requirements of the CDA for this Court to assume jurisdiction of a contractor's claim. Scan-Tech Security LP v. United States, 46 Fed. Cl. 326, 330 (2000). Consequently, pursuant to the CDA, this Court may not entertain any claim that has not been properly submitted to the contracting officer for a decision. W.M. Schlosser Co. v. United States, 705 F.2d 1336, 1338-39 (Fed. Cir. 1983).

The CDA requires that: "[A]ll claims by a contractor against the government . . . shall be in writing and shall be submitted to the contracting officer for decision." 41 U.S.C. § 605(a). While the CDA does not explicitly define "claim," its implementing regulation, provides that a claim is:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. . . . a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act and 33.207

[1] The Bonneville Power Administration is a Federal agency within the Department of Energy created by Congress in 1937 to market low-cost hydroelectric power in the Pacific Northwest. 16 U.S.C. §§ 832-832m.

48 C.F.R. § 33.201 (2004) (emphasis added). Submission of a certified claim to the contracting officer by the contractor is "an unequivocal prerequisite for a post-CDA claim being considered under [the CDA]." Fidelity Construction v. United States, 700 F.2d 1379, 1384 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983) ("[t]he submission of an uncertified claim . . . is, in effect, a legal nullity"). Accord Newport News Shipbuilding v. Garrett, 6 F.3d 1547 (Fed. Cir. 1993). Thus, a claim over $100,000 that is not certified does not constitute a claim under the CDA and does not confer jurisdiction upon this Court.

The purpose underlying the certification requirement is an important one, as it is to deter contractors from engaging in fraudulent behavior, such as submitting unwarranted or inflated claims. Fischbach & Moore Int'l Corp. v. Christopher, 987 F.2d 759, 763 (Fed. Cir. 1993). Section 605(c)(1) of Title 41 mandates that the contractor include with its claim language indicating that "the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor." While the CDA permits contractors to correct a defective certification, defined as one that "alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person duly authorized to bind the contractor with respect to the claim," 48 C.F.R. § 33.201, it does not allow them to ignore and evade the certification requirement entirely. A lack of any certification constitutes a jurisdictional bar to the filing of a complaint in this Court. Scan-Tech, 46 Fed. Cl. at 340 (citing, among others, W.M. Schlosser, 705 F.2d at 1338-39; Pevar Co. v. United States, 32 Fed. Cl. 822, 825 (1995); Hamza v. United States, 31 Fed. Cl. 315, 324 (1994)).

Under these principles, because Mustang completely failed to certify any of its claims, this Court does not possess jurisdiction to entertain Mustang's complaint. Mustang submitted six documents that could arguably be construed as claims, but for the fact that none of these documents were certified as required by the CDA.

Mustang's September 3, 2002 proposal for reimbursement of additional costs pursuant to amendment 8 requested $571,462.75. Mustang did not certify this claim or include any language remotely resembling a certification.

Mustang's revised proposal dated September 19, 2002, requested $200,096.33, and included a revised price proposal for work orders 11 through 17 in the amount of $53,685.32. App. at 20-25. Mustang did not certify this claim or include any language remotely resembling a certification.

Mustang's October 25, 2002 letter to the BPA contracting officer, requesting $278,820.53 in additional costs, unrelated to amendment 8, because it allegedly encountered differing site conditions in the form of more rock than it had originally anticipated, contained no certification language of any kind. App. at 29-42.

Mustang's December 23, 2002 letter to the BPA contracting officer requesting $130,357.17 in additional costs due to the alleged differing site conditions, contained no certification language. App. at 43-62.

Mustang's September 18, 2003 letter, stating "[p]lease consider this a Formal Claim under DISPUTES RESOLUTION PROCESS (21-3)," requested $369,693.28. App. at 93. Again, Mustang did not certify this amount or include any certification language.

Finally, Mustang's January 16, 2004 "'unofficial' communication," which did not request a specific amount of money, was not certified. App. at 107-119.

In sum, none of Mustang's requests for payment contained any language indicating that Mustang was certifying its claim. This fact is of particular import in this case, where the Government has brought counterclaims based in fraud against Mustang. Consequently, none of Mustang's claims can be considered a proper CDA claim and, therefore, Mustang cannot demonstrate that it has met the jurisdictional prerequisites of this Court. Because it cannot do so, Mustang's complaint must be dismissed. E.g., Christianson v. Colt Industries Operating Corp., 486 U.S. 800 (1988) (court lacking jurisdiction should dismiss case because it cannot review

merits); Johns-Manville Corp. v. United States, 893 F.2d 324, 327 (Fed. Cir. 1989); Medina Construction, Ltd. v. United States, 43 Fed. Cl. 537, 547 (1999).

## CONCLUSION

It is for the foregoing reasons that we request that this Court dismiss plaintiff's complaint in its entirety.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/Lindsay E. Williams
LINDSAY E. WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-7995
Fax: (202) 514-8624

January 18, 2005

Attorneys for Defendant

## APPENDIX TABLE OF CONTENTS

Serial Letter #78, dated September 3, 2002 . . . . . 1

Serial Letter #85, dated September 19, 2002 . . . . . 17

Contract Amendment 11 . . . . . 22

Serial Letter #94, dated October 25, 2002 . . . . . 24

Serial Letter #94b, dated December 23, 2002 . . . . . 31

Contract Amendment 21 . . . . . 51

Contracting Officer's Decision, May 27, 2003 . . . . . 53

Results of Audit Review, September 2, 2003 . . . . . 60

Results of Audit for Work Orders 56 and 57, October 27 and 29, 2003 . . . . . 75

Contracting Officer's Final Decision, November 6, 2003 . . . . . 81

Memorandum, dated January 16, 2004 . . . . . 94