| | | Proposed | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|
| Equip # | Description | Hourly Rate | No of Hours | Total | Hourly Rate | No of Hours | Total | Disallowed Costs |
| P026 | 2000 Dodge 1 Ton 4x4 W/Winch - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| P027 | 2000 Dodge 1 Ton 4x4 W/Winch - Diesel | 2.56 | 250 | 640 | 2.56 | 100 | 256 | 384 |
| P028 | 2001 Dodge 1 Ton 4x4 W/Mechanics Box - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| P029 | 2001 Dodge 1 Ton 4x4 W/Mechanics Box - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| P030 | 2001 Dodge 1 Ton 4x4 W/Mechanics Box - Diesel | 2.56 | 250 | 640 | 2.56 | 100 | 256 | 384 |
| P031 | Dodge 1 Ton 4x4 W/Winch - Diesel-Flatbed | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| P032 | 2000 Dodge 1 Ton 4x4 W/Winch - Diesel-Flatbed | 2.56 | 250 | 640 | 2.56 | 30 | 77 | 563 |
| P033 | 2000 Dodge 1 Ton 4x4 W/Winch - Diesel-Flatbed | 2.56 | 250 | 640 | 2.56 | 30 | 77 | 563 |
| S005/T021 | Mack Truck With S-5 3-Drum Puller | 19.51 | 250 | 4,876 | 19.51 | 70 | 1,365 | 3,511 |
| S006/T022 | Kenworth Truck With S-6 3-Drum Puller | 19.51 | 250 | 4,876 | 19.51 | 70 | 1,365 | 3,511 |
| S007/T023 | 1953 Ih 6x6 With S-7 2-Bundle Tensioner | 19.51 | 250 | 4,876 | 19.51 | 70 | 1,365 | 3,511 |
| S17 | Utah Sprocket Puller -On Freuhoff Trailer | 18.61 | 250 | 4,651 | 18.61 | 70 | 1,302 | 3,349 |
| T004 | 1990 Kenworth W900 T/A Truck Tractor-80,000lb Gvw | 7.99 | 250 | 1,996 | 7.99 | 100 | 799 | 1,198 |
| T008 | Ford Truck 32,000 Gvw | 9.41 | 250 | 2,353 | 9.41 | 130 | 1,223 | 1,129 |
| T012 | 1982 Ford F-700 Truck Gvw 28,000 | 3.56 | 250 | 889 | 3.56 | 30 | 107 | 782 |
| T013 | White Truck/Tractor 6x6 | 8.60 | 250 | 2,150 | 8.60 | 70 | 602 | 1,548 |
| T016 | International R-210 With Tensioner -Puller | 19.51 | 250 | 4,876 | 19.51 | 70 | 1,365 | 3,511 |
| T017 | Oshkosh Truck With Condor 90s Boom | 10.02 | 250 | 2,505 | 10.02 | 70 | 701 | 1,804 |
| T019 | Kenworth Tractor/Trailer | 7.99 | 250 | 1,996 | 7.99 | 100 | 799 | 1,198 |
| T027 | 1982 Ford F-700 Truck Gvw 28,000 | 8.65 | 250 | 2,163 | 8.65 | 100 | 865 | 1,298 |
| T036 | International 6x6 Truck-Tractor | 7.01 | 250 | 1,751 | 7.01 | 70 | 490 | 1,261 |
| T052 | Manitex C151 357 25-Ton Crane On 1997 Peterbilt | 15.92 | 250 | 3,980 | 15.92 | 100 | 1,592 | 2,388 |
| T053 | Intl Paystar 5000 | 8.60 | 250 | 2,150 | 8.60 | 70 | 602 | 1,548 |
| T054 | Intl Paystar 5000 | 8.60 | 250 | 2,150 | 8.60 | 70 | 602 | 1,548 |
| T059 | Ford Bucket Truck | 3.50 | 250 | 874 | 3.50 | 100 | 350 | 524 |
| W019 | 1997 Ford F250 3/4 T0n 4x4 Pickup - Gas | 1.98 | 250 | 495 | 1.98 | 100 | 198 | 297 |
| W020 | 1998 Dodge 1-Ton 4x4 Quad Cab Pickup - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| W021 | 2000 Dodge 1-Ton 4x4 Quad Cab Pickup - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| W022 | Dodge 1-Ton 4x4 Quad Cab Pickup - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |
| W024 | 1993 Ford F250 3/4 Ton 4x4 Pickup - Diesel | 2.17 | 250 | 543 | 2.17 | 100 | 217 | 326 |
| W025 | 1994 Dodge 1/2-Ton 4x4 Pickup - Diesel | 2.15 | 250 | 538 | 2.15 | 70 | 151 | 387 |
| W027 | 1997 Dodge 3/4-Ton 4x4 Pickup- Diesel | 2.17 | 250 | 543 | 2.17 | - | - | 543 |
| W028 | 1997 Ford F250 3/4 4x4 T0n Pickup - Gas | 1.98 | 250 | 495 | 1.98 | 130 | 257 | 238 |
| W030 | 1997 Ford F250 3/4 4x4 T0n Pickup - Gas | 1.98 | 250 | 495 | 1.98 | 130 | 257 | 238 |
| W031 | 2002 Dodge 1 Ton 4x4 W/Winch - Diesel | 2.56 | 250 | 640 | 2.56 | 130 | 333 | 307 |

| | | Proposed | | | Recommended | | | |
|---|---|---|---|---|---|---|---|---|
| Equip # | Description | Hourly Rate | No of Hours | Total | Hourly Rate | No of Hours | Total | Disallowed Costs |
| W032 | 1989 Ford F350 1ton 4x4 Pickup - Diesel | 2.56 | 250 | 640 | 2.56 | 70 | 179 | 461 |
| W033 | 2002 Dodge 1 Ton 4x4 W/Winch - Diesel | 2.56 | 250 | 640 | 2.56 | - | - | 640 |
| W034 | 2002 Dodge 1 Ton 4x4 W/Winch - Diesel | 2.56 | 250 | 640 | 2.56 | - | - | 640 |
| R149 | Manitex - On Peterbilt | 19.91 | 250 | 4,977 | 19.91 | 152 | 3,026 | 1,951 |
| R159 | Manitex - On Peterbilt | 24.09 | 250 | 6,023 | 24.09 | - | - | 6,023 |
| R151 | Manitex - On Peterbilt | 24.09 | 250 | 6,023 | 24.09 | 111 | 2,674 | 3,349 |
| R139 | Manitex - On Peterbilt | 15.91 | 250 | 3,977 | 15.91 | 100 | 1,591 | 2,386 |
| | 16-Wire Reel Jacks | 1.42 | 250 | 355 | 1.42 | 50 | 71 | 284 |
| | Grips | 2.10 | 250 | 525 | 2.10 | 100 | 210 | 315 |
| | Travelers- 150 @ .28/Hr | 42.00 | 250 | 10,500 | 42.00 | 80 | 3,360 | 7,140 |
| Total | | 595.97 | | 148,993 | 595.97 | | 49,986 | 99,007 |

United States Government

Department of Energy

# memorandum

Bonneville Power Administration

DATE: July 29, 2003

REPLY TO
ATTN OF: KN-7

SUBJECT: Review of Mustang Line Contractor's Proposal for Environmental Subcontract Costs (Contract No. 0009368)

TO: Shantini Ratnathicam – TNFD

As you requested, we reviewed the portion of the Mustang Line Contractors (Mustang) proposal relating to environmental costs for the tower steel change-outs on the Santium-Bethel tap. We evaluated the proposed costs to determine which are reasonable, allowable and allocable to the contract. As discussed below, we found that Mustang's proposal of $54,146 for environmental subcontractor work is an estimate based on incorrect assumptions about the activities attributable to the change-outs. Based on our identification and appropriate pricing of attributable activities outlined below, we recommend that you accept costs of $3,516, and disallow costs of $50,630.

Background

On April 29, 2002, the Bonneville Power Administration (BPA) entered into construction contract No. 00009368 with Mustang for the construction of the Santium-Bethel tap. This negotiated, firm-fixed-price contract had an initial contract value of $4,182,676. During contract performance, the contract was amended through Modification No. 8 (Amendment 8) to replace defective welded steel members in accordance with the Technical Specification 08.01.09, MISFABRICATED OR DAMAGED STEEL, and Mustang was directed through the CHANGES Clause to submit a proposal to price the additional work.

Mustang submitted a proposal, dated September 16, 2002, through Serial Letter #78C, in the amount of $623,500.98, involving six separate proposal components for efforts to replace the defective welded steel members. These components included (i) direct costs incurred for the tower steel change outs in time and materials efforts specified in Amendment 8, for the first week; (ii) direct costs for steel replacement; (iii) extended field overhead; (iv) environmental subcontractor costs; (v) standby equipment charges; and (vi) right-of-way (ROW) compaction. BPA and Mustang have negotiated and agreed upon prices for the first two of these components, covering all direct costs incurred for the tower steel change outs. The negotiated amounts were incorporated into the contract in amendments 11 and 21.

Objective and scope

The objective of this review was to determine if the environmental subcontractor charges proposed by Mustang are reasonable, allowable, and allocable to the contract based upon the performance of additional work under Amendment 8. Our review addresses the "quantum" of these proposed costs, not any "merit" or eligibility issues. Use of the term "allow" or "allowable" should be read in this context, and should not be construed as referring to the merit of any issue presented in Mustang's proposal.

We reviewed and analyzed the proposal and accompanying documentation, reviewed additional information provided by Mustang, and reviewed both BPA and Mustang daily inspector reports and other project documentation. Specifically, our review included evaluating the activities performed to ensure this effort was attributable to the extra work required by Amendment 8, and priced appropriately. This review is limited to the review of the environmental subcontractor charges and not the proposal taken as a whole.

Found that proposal is an estimate based on incorrect assumptions

Mustang's proposal is an estimate prepared and submitted prior to the extended contract period, and is not based on actual costs. It is based on an assumption that the level of effort expended prior to the extended contract period, would apply to the extended contract period as well. This was not the case since most environmental measures were installed prior to the extended contract period, and were not a result of the Amendment 8 work.

The proposed amount of $54,146 for environmental subcontractor costs, is based on an average of prior months' subcontractor billings, factored for an assumed 30-day performance period. However, the actual extension period was 22 days, not 30 days. Mustang estimated the $54,146 by multiplying the average weekly costs for the environmental subcontractor of $10,949.63, by 4.3, the number of weeks in 30 days, and applying a markup of 15 percent ($10,949.63 x 4.3 x 15% = $54,145.90). The proposal did not differentiate between activities funded by the original contract and those activities in support of the additional work required by Amendment 8. Mustang's position is that it would not have incurred the environmental costs if not for the extra work.

Identified activities attributable to Amendment 8 work

To determine if the costs were attributable to the Amendment 8 work, we reviewed the subcontractor's activities as described in its daily reports. Using the daily report information, along with technical advice from the BPA COTR, we identified the activities we would categorize as additional work, and therefore reimbursable under this proposal. We disallowed proposed activities such as performing tasks not considered environmental in nature, or performing tasks funded under the original contract. The additional activities were performed during the extension period of October 4, 2002, through October 25, 2002.

Used composite rate to price Amendment 8 work

We priced the activities identified as additional work required by Amendment 8 by applying a composite rate for labor costs, supplies, and equipment costs to estimated hours for this effort. The composite rate represents the total labor charges and supplies and equipment costs billed to Mustang in October 2002 divided by the total hours worked during the period. We estimated hours for the additional Amendment 8 work by comparing this effort to the total hours worked during the period.

**Bonneville Power Administration**
**Review of Environmental Costs**

| Description | (9n) Proposal | Review | Components | Costs | Disallowed |
|---|---|---|---|---|---|
| 16 week total | 175194.00 | Estimated Hours | 40.95 | | |
| Average per Week | 10949.63 | Estimated Labor & ODC Rate | 63.58 | | |
| | | Period Cost (HrsxRate) | | 2603.76 | |
| Weeks per Month | 4.3 | Markup @ 10% | 6.36 | 260.38 | |
| Monthly Cost | 47083.39 | Equipment (HrsxRate) | 4.72 | 193.16 | |
| | | Subtotal | | 3057.30 | |
| Markup @ 15% | 7062.51 | Markup @ 15% | | 458.59 | |
| Totals | **54145.90** | Totals | | **3515.89** | **50630.01** |

Purpose: Summarize review of environmental costs

Source: Serial Letter 78 **9n**
Serial Letter 78C
Discusions with COTR
Supporting w/p "Reports, Priced", "Rates"
Mustang Pay Estimates 20, 21, 22, 23, 24

Work Performed: Review proposal and understand how costs were proposed.
Determine what facts are known that should be considered:
Proposed costs are explained in Serial letter 78 and 78C.
Activities performed are in daily work reports provided by CO
Norm Smith provided a worksheet summarizing Big Dog costs
Documents with Pay Estimate 20 show how costs are collected by Mustang and how they feed the accounts payable. This information confirms the information Norm Smith sent.
Identified "additional activities" in support of amendment 8 work by scheduling the Big Dog activities in the daily reports, reviewing the activities looking for obviously not environmental work, and providing the schedule to the COTR to get her opinion on which activities are considered "additional" and leaving the activities that are required, and funded by the original contract.
Estimated a composite rate for labor by dividing total monthly labor costs by the hours incurred in October. We were unable to determine if Mustang was in compliance with clause 22-11 of the contract, which could have a cost impact. The issue is Mustang was paid on a percent complete basis, while it paid

Big Dog on a costs incurred, with a 10% withhold, basis.

Estimated a composite rate for ODC by dividing total monthly ODC costs by the hours incurred in October.

Estimated the markup to be applied based on prior Big Dog billings. Labor and ODC are marked up at 10%, rather than the proposed 15%, and rented equipment is not burdened.

Priced our recommended hours using factors developed above.

Findings:

The Big Dog costs were proposed as an average of earlier billings, converted to the one month period Mustang estimated for the extra work. The proposal did not make an effort to separate "additional" from original contract work. The Mustang comment was that if the work was not extended, they would not have incurred the costs. For costs to be reasonable and allocable in the equitable adjustment, they must be attributable to the "additional" work required under the change order. We have concluded that the work identified in the "Reports/ Priced" worksheet does represent "additional" work in support of amendment 8. This work was priced using an estimated rate based on Big Dog billings. Since the daily reports do not always identify the performing people, and the invoices do not segregate by labor categories or rates, we believe the estimate is a reasonable approach, although it may be overstated due to the performing employees actual labor rates. Our working hours were estimated by dividing the number of hours worked in a day by the number of tasks performed in a day. Most activities in the daily reports were not documented with the time spent on that activity, so an estimate is appropriate to price the activity. Accordingly, our estimate of reasonable costs for the additional work under amendment 8 is $3,515.89.

United States Government | Department of Energy

# memorandum

Bonneville Power Administration

DATE: July 28, 2003

REPLY TO ATTN OF: KN-7

SUBJECT: Review of Mustang Line Contractors Proposed Extended Field Office Overhead Costs (Contract No. 00009368)

TO: Shantini Ratnathicam – TNFD

As you requested, we reviewed the portion of the Mustang Line Contractors (Mustang) proposal relating to extended field office overhead costs for the tower steel change-outs on the Santium-Bethel tap. We evaluated the proposed costs to determine which are reasonable, allowable and allocable to the contract. As discussed below, we found that Mustang's proposal of $101,426 for extended field office overhead is an estimate based on 4.3 weeks of costs applicable to the change-outs. Based on the actual number of days change-out efforts were performed, we recommend you accept costs of $71,995, and disallow costs of $29,431 (see Attachment).

Background

On April 29, 2002, the Bonneville Power Administration (BPA) entered into construction contract No. 00009368 with Mustang for the construction of the Santium-Bethel tap. This negotiated, firm-fixed-price contract had an initial contract value of $4,182,676. During contract performance, the contract was amended through Modification No. 8 (Amendment 8) to replace defective welded steel members in accordance with the Technical Specification 08.01.09, MISFABRICATED OR DAMAGED STEEL, and BPA directed Mustang through the CHANGES Clause to submit a proposal to price the additional work.

Mustang submitted a proposal, dated September 16, 2002, through Serial Letter #78C, in the amount of $623,500.98, involving six separate proposal components for efforts to replace the defective welded steel members. These components included (i) direct costs incurred for the tower steel change outs in time and materials efforts specified in Amendment 8, for the first week; (ii) direct costs for steel replacement; (iii) extended field overhead; (iv) environmental subcontractor costs; (v) standby equipment charges; and (vi) right-of-way (ROW) compaction. BPA and Mustang have negotiated and agreed upon prices for the first two of these components, covering all direct costs incurred for the tower steel change outs. The negotiated amounts were incorporated into the contract in amendments 11 and 21.

Objectives and scope

The objectives of this review were to determine if the extended field office overhead costs proposed by Mustang are allocable to the contract based upon the performance of additional work under Amendment 8, and if they were properly calculated and based on documentation. Our review addresses the "quantum" of these proposed costs, not any "merit" or eligibility issues. Use of the term "allow" or "allowable" should be read in this context, and should not be construed as referring to the merit of any issue presented in Mustang's proposal.

We reviewed and analyzed the proposal and accompanying documentation and reviewed additional information provided by Mustang. Specifically, our review included verifying the proposed field

office overhead expenses to supporting documentation and evaluating the time period over which Mustang estimated it would incur these costs. This review is limited to the review of the extended field office overhead costs and not the proposal taken as a whole.

Proposal is an estimate based on incorrect assumption about extension period

Mustang's estimate was prepared and submitted prior to the extended contract period and is not based on actual costs. It assumes an extension period of 30 days (4.3 weeks). The original period of performance for the contract ended October 1, 2002, but was extended by Amendment 4 for two days, until October 3, 2002. The performance period allowed for Amendment 8 work was extended for 14 days through Amendment 11, and for 8 days through Amendment 13, for a performance period lasting through October 25, 2002. As such, these contract amendments provided a maximum 22-day extension period.

Proposal based on weekly costs that are generally supported

Mustang's proposed extended field office overhead costs of $101,426 are comprised of (i) $88,196 for labor and payroll expenses, subsistence and housing expenses, field office rent, utilities and communication expenses, and (ii) $13,229 for markup of 15 percent of the aforementioned costs. The $88,196 was computed by multiplying weekly costs of $20,511 by 4.3 (weeks in 30 days). Mustang's accounting records generally supported the proposed labor costs. The proposed housing/subsistence amount appears reasonable compared to the Federal Travel Regulations amount. Finally, we verified the monthly lease to Mustang's accounts payable – check stub carbons.

Used daily rate to compute cost of Amendment 8 work

We computed the extended field office overhead costs of the Amendment 8 work by dividing Mustang's proposed weekly amounts (for all categories except the Land Liaison Officer) to compute a daily rate. We then multiplied this daily rate by 22 days, the number of days that the contract was actually extended. With the respect to the Land Liaison Officer, we used 14 days, rather than 22 days, because it was noted he left during the contract extension.

Recommend $29,431 be disallowed

Based on our computations as shown in the Attachment, we determined that the allowable extended field office overhead costs are $71,995. We recommend that you allow these costs and disallow the additional claim amount of $29,431.

If you have any questions regarding our report, please contact Ann Marie Sherman (503) 230-4547.

Mike Sparks, Manager
Internal Audit

Attachment

cc: D. Bowling - KN-7 A. Sherman - KN-7 Official File - KN (MN-17-11/36189-28)

ASherman/MSparks:jp:7/28/03(Report-Mustg-ExtOH.doc)

Attachment

| Cost Category | Proposed Costs per Week | Computation of Recommended Costs: Proposed Costs per Day | No of Extended Contract Days | Recommended Costs | Disallowed Costs |
|---|---|---|---|---|---|
| Field Office Secretary | 1,931.18 | 275.88 | 22 | 6,069.42 | |
| Mechanic - 1 | 3,168.19 | 452.60 | 22 | 9,957.17 | |
| Mechanic - 2 | 2,723.69 | 389.10 | 22 | 8,560.17 | |
| Site Superintendent | 2,315.64 | 330.81 | 22 | 7,277.73 | |
| Safety Officer | 2,085.56 | 297.94 | 22 | 6,554.62 | |
| Wire Superintendent | 2,575.80 | 367.97 | 22 | 8,095.37 | |
| Steel Superintendent | 2,313.20 | 330.46 | 22 | 7,270.06 | |
| Liaison Officer | 1,625.40 | 232.20 | 14 | 3,250.80 | |
| Rent | 930.23 | 132.89 | 22 | 2,923.59 | |
| Utilities | 327.39 | 46.77 | 22 | 1,028.94 | |
| Communications | 514.45 | 73.49 | 22 | 1,616.85 | |
| Total Costs per week | 20,510.73 | | | 62,604.70 | |
| Weeks per month | 4.30 | | | | |
| Total Costs per month | 88,196.15 | | | 62,604.70 | 25,591.45 |
| Markup @ 15% | 13,229.42 | | | 9,390.71 | 3,838.72 |
| Total Proposed Monthly Costs | 101,425.57 | | | 71,995.41 | 29,430.17 |

# memorandum

Bonneville Power Administration

DATE: October 27, 2003

Enclosure (4) to CO Decision

REPLY TO ATTN OF: KN-7

SUBJECT: Review of Mustang Line Contractor's Proposal for Costs for Extra Steel for Structures 17/3 - 2/5 Incurred Under Work Order No. 57 (Contract No. 0009368)

TO: Shantini Ratnathicam – TNFD

As you requested, we reviewed the Mustang Line Contractors (Mustang) proposal relating to Work Order 57 (W.O. 57) costs for extra steel on the Santium-Bethel Tap structures 17/3 – 2/5. We evaluated the proposed costs to determine which are reasonable, allowable and allocable to the contract. As discussed below, we found that Mustang's proposal of $29,815 for W.O. 57 is an estimate based on incorrect assumptions about the work to be performed under the original contract and work added by this work order. Based on our identification and pricing of the covered work outlined below, we recommend that you accept costs of $18,363, and disallow costs of $11,452.

This report replaces our October 3, 2003, report in its entirety. It provides further clarification regarding our disallowed costs; the amount of our disallowed costs has not changed.

## Background

On April 29, 2002, the Bonneville Power Administration (BPA) entered into construction contract No. 00009368 with Mustang for the construction of the Santium-Bethel tap. This negotiated, firm-fixed-price contract had an initial contract value of $4,182,676. During contract performance, the contract was amended through Modification No. 8, (Amendment 8) to replace defective welded steel members in accordance with the Technical Specification 08.01.09, MISFABRICATED OR DAMAGED STEEL, and Mustang was directed through the CHANGES Clause to submit a proposal to price the additional work.

Mustang submitted a proposal dated September 16, 2002, for efforts to replace the defective welded steel members. BPA and Mustang have negotiated and agreed upon prices for the direct costs incurred for the Tower Steel change outs, as well as some of the indirect type costs, and the time and material efforts. The negotiated amounts were incorporated into the contract in amendments 11 and 21. W.O. 57 is for work in addition to the Amendment 8 work, and was designed to allow recovery of costs incurred but not recovered through the other amendments.

## Objectives and scope

The objectives of this review were to determine if the W.O. 57 charges proposed by Mustang are reasonable, allowable, and allocable to the contract based upon the performance of additional work outside of Amendment 8, and if they are properly calculated and based on documented cost records. Our review addresses the "quantum" of these proposed costs, not any "merit" or

eligibility issues. Use of the term "allow" or "allowable" should be read in this context, and should not be construed as referring to the merit of any issue presented in Mustang's proposal. We reviewed and analyzed the proposal and accompanying documentation, reviewed additional information provided by Mustang, and reviewed Mustang daily inspector reports; and other project documentation. We did not contact Mustang during the review. Specifically, our review included (i) verifying that costs were not covered in other work orders, (ii) verifying that salaried foremen are charged properly, and (iii) reviewing for any other cost presentation issues. This review is limited to the review of the proposed W.O. 57 charges.

Proposal overstated by $11,452

And, Mustang still requests payment on appeal to Claims Ct.

Mustang proposed costs of $29,815 for additional work performed under W.O. 57, of which we recommend disallowing $11,452. Our disallowed costs represent (i) duplicated Work Order No. 56 costs; (ii) foreman hours included in overhead costs; (iii) costs paid under other amendments; (iv); proposed labor hours and rates not reflected in payroll records; and (v) costs inadequately documented.

Disallow $2,383 for duplicated Work Order 56 costs

Mustang proposed labor and equipment costs to shake out steel for structure 17/5 on 9/23/02. This effort was actually performed on 8/26/02 based on Mustang's Foreman's Daily Report. Work Order No. 56 also contains labor and equipment costs to shake out steel for structure 17/5 on this same date (8/26/02). As such, we disallowed the proposed amount of $2,383 in its entirety.

Ditto

Disallow $2,397 for salaried foremen being charged to both overhead and direct work orders

Salaried foremen are booked to the job as a direct charge, and BPA is being asked to pay for the costs as a direct cost. However, this is duplicative since the costs for salaried foremen are recovered through overhead. While Mustang has offered rationale for treating the costs as direct, it has provided no support for a claim of increased costs. Accordingly, we recommend disallowing the costs of salaried foremen, for a total of $2,397, including mark-up at 15 percent.

Disallow $4,224 for costs previously paid under other amendments

Ditto

Mustang has proposed labor and equipment costs of $4,224 to (i) change out Village Iron Steel for structures 9/3 and 8/4 and (ii) take misfabbed #100 plates and install replacements at location 9/5 on 8/28/02. However, since discussions with the COTR indicate Mustang was paid for these costs under other contract amendments, we recommend disallowing them in their entirety. Of the total disallowed costs, $2,417 represents Village Iron Steel change out costs (paid under Amendment 6) and $1,807 represents misfabbed #100 plates (paid under Amendment 21). Total disallowed costs include labor, equipment, and mark-up at 15 percent.

Disallow $1,401 for labor hours and rates not reflected in payroll records

Mustang proposed labor and equipment costs for (i) repairing the cracked 95 level and dealing with extra ABB steel on structure 6/1; (ii) dealing with extra steel on BB structure 5/4 on 7/7/02;

# memorandum

Bonneville Power Administration

Enclosure (5) to CO Decision

DATE: October 29, 2003

REPLY TO ATTN OF: KN-7

SUBJECT: Review of Mustang Line Contractor's Proposal for Work Order 56 Costs for Picking up and Delivering Steel Structures (Contract No. 0009368)

TO: Shantini Ratnathicam – TNFD

As you requested, we reviewed the Mustang Line Contractors (Mustang) proposal relating to Work Order 56 (W.O. 56) costs for picking up and delivering steel structures on the Santiam-Bethel tap. We evaluated the proposed costs to determine which are reasonable, allowable and allocable to the contract. As discussed below, we found that Mustang's proposal of $31,050.84 for W.O. 56 is an estimate based on incorrect assumptions about the work to be performed under the original contract and work added by this work order. Based on our identification and pricing of the covered work outlined below, we recommend that you accept costs of $6,422, and disallow costs of $24,629.

This report replaces our October 8, 2003, report in its entirety. It provides further clarification regarding our disallowed costs; the amount of our disallowed costs has not changed.

## Background

On April 29, 2002, the Bonneville Power Administration (BPA) entered into construction contract No. 00009368 with Mustang for the construction of the Santiam-Bethel tap. This negotiated, firm-fixed-price contract had an initial contract value of $4,182,676. During contract performance, the contract was amended through Modification No. 8 (Amendment 8) to replace defective welded steel members in accordance with the Technical Specification 08.01.09, MISFABRICATED OR DAMAGED STEEL, and Mustang was directed through the CHANGES Clause to submit a proposal to price the additional work.

Mustang submitted a proposal dated September 16, 2002, for efforts to replace the defective welded steel members. BPA and Mustang have negotiated and agreed upon prices for the direct costs incurred for the tower steel change outs, as well as some of the indirect type costs, and the time and materials efforts. The negotiated amounts were incorporated into the contract in amendments 11 and 21. W.O. 56 is for work in addition to the Amendment 8 work, and was designed to allow recovery of costs incurred but not recovered through the other amendments.

## Objectives and scope

The objectives of this review were to determine if the W.O. 56 charges proposed by Mustang are reasonable, allowable, and allocable to the contract based upon the performance of additional work outside of Amendment 8, and if they are properly calculated and based on documented cost records. Our review addresses the "quantum" of these proposed costs, not any "merit" or eligibility issues. Use of the term "allow" or "allowable" should be read in this context, and should not be construed as referring to the merit of any issue presented in Mustang's proposal.

Disallow $3,029 for costs previously paid under Amendment 11

Again, Mustang still requests payment in its Appeal to Claims Ct.

Costs are being proposed for work that was paid under Amendment 11. It is not reasonable for BPA to pay twice for services rendered once. Accordingly, we recommend disallowing the costs for Amendment 11 work being charged to this work order. The disallowed costs total $3,029, and include labor, equipment, and mark-up at 15 percent.

If you have any questions regarding our report, please contact Dennis Bowling at (360) 619-6821.

Mike Sparks, Manager
Internal Audit

cc:
D. Bowling - KN-7
Official File - KN (MN-17-11/36189-28)

DBowling:jp:10/29/03(Report-Mustg-WO56a.doc)

Pg 1 of 2

# MUSTANG line contractors

*"...our spirit is as strong as our name!"*

Quantum Issues Claim

September 18, 2003

Serial # 119
Via email, hard copy to follow
**Retain UPS Delivery Receipt**

Bonneville Power Administration
ATTN: Glen Nishida – TLC-MODW
PO Box 491
Vancouver, WA 98666-0491

Ron Roth received (Glenn out) 9/19/03

**Contract 9368 - Rebuild of the Santiam-Bethel Tap**

**RE: DISPUTES RESOLUTION PROCESS (21-3)**

Gentlemen:

We have received your letter dated September 15, 2003, with Contract Amendment 23. We are rejecting Amendment 23.

Please consider this a Formal Claim under DISPUTES RESOLUTION PROCESS (21-3). The Claim is in the amount of **$369, 693.28**, broken down as follows:

| W/O | Serial Letter | Description | Amount |
|---|---|---|---|
| 56 | 110 | Picking Up and Delivering Steel, etc. | 31,050.84 |
| 57 | 110 | Steel Extras, Structures 17/3 – 2/5 | 29,814.72 |
| None | 85/78B | Extended Field Overhead | 101,425.57 |
| None | 85/78B | Environmental Subcontractor | 54,145.90 |
| None | 85/78B | Standby Equipment | 148,992.05 |
| None | 85/78B | ROW Compaction | 4,264.20 |
| **Total** | | | **$369,693.28** |

As an alternative to our Price Proposal, Mustang will supply actual Time and Material information for costs associated with the bad steel fabrication.

Actuals already audited by BPA

Please consider this a Formal Demand for payment of the undisputed portion of the Claim. From your letter, this amount is $134, 023.00. Please incorporate this amount into a revised Change Order or Amendment.

pg 2 of 2

If you have further questions please call Norm Smith - (877) 678-6456.

Yours truly,

Norm Smith

Contract Administrator

(Not CDA certified)

Not signed by Brock Maslonka (President)

**Department of Energy**
Bonneville Power Administration
P.O. Box 491
Vancouver, Washington 98666-0491
TRANSMISSION BUSINESS LINE

CO Decision on Quantum Issues

November 6, 2003

In reply refer to: TLC-MODW

REGISTERED MAIL – RETURN RECEIPT REQUESTED

MUSTANG LINE CONTRACTORS, INC.
10220 N. NEVADA STREET
SUITE 260
SPOKANE, WA 99218-3117

[Mustang received Nov. 10, 2003]

RE: Contracting Officer's Final Decision, Claim (dated September 18, 2003) - Contract Number 9368, Rebuild of the Santiam-Bethel Tap Double Circuit 230-kV Transmission Line, Located in Marion and Linn Counties, Oregon

Gentlemen:

Attached please find the referenced Contracting Officer's Decision.

Should you have any questions, please contact the undersigned at 360-418-2379, email ganishida@bpa.gov.

Sincerely,

Glenn A. Nishida
Contracting Officer
Logistics Services – TLC-MODW

Enclosure

Appeal time frames:
Arbitration - 90 days to Feb 8 (Sunday), Say Feb 9, 2004 - (No)
DOE BCA - Ditto - (No)
US Ct. of Fed Claims - 1 year - Nov. 6, 2004 - (Yes)



[Appealed May 21, 2004]

Bcc:

Specs & Construction Management - TNFD/TPP-3
Construction Manager – Shantini Ratnathicam, TNFD/TPP-3
Construction Inspection - TNFE/TPP-3
Inspector – Patrick Smith, TNFE/TPP-3
PM – Mark Korsness, TNP/TPP-3
D. Bowling – KN-7
Counsel – J. Margeson, LC-7
Counsel – R. Jones, LT-7
CO/COR – TLC/MODW
Official File – TLC-MODW (SU-12-13-2)

Ganishida:gan:2379:11/07/2003 (H:\Personal\Projects\Santiam-Bethel)

**Contracting Officer's Final Decision**

**Contractor's Claim (dated September 18, 2003)**

**Contract No. 00009368**

**Rebuild of the Santiam-Bethel Tap Double Circuit 230kV Transmission Line**

## I. BACKGROUND AND CHRONOLOGY

On April 29, 2002, the Bonneville Power Administration (BPA) awarded Contract Number 00009368 to Mustang Line Contractors, Inc. (hereafter referred to as Mustang or the Contractor), in the amount of $4,182,675.57; to remove approximately seventeen miles of single circuit 230kV transmission line, and replace it with a new Double Circuit 230kV transmission line.

On August 28, 2002, the Contracting Officer issued Contract Amendment Number 8; an unpriced change order directing Mustang to replace defective (BPA furnished) welded steel members and to stop all conductor stringing operations until all defective steel component members were replaced.

On September 3, 2002, Mustang submitted (Serial Letter Number 78) a proposal for Amendment Number 8, totaling $571,462.75. In this proposal, Mustang also requested a 30-day time extension and a change in work hours to six 12-hour days per week. Mustang's proposal was itemized as follows:

| | |
|---|---|
| Time and Materials to Date | $ 55,948.25 |
| Direct Costs for Steel Replacement | 206,686.78 |
| Extended Field Office Overhead | 101,425.57 |
| Environmental Subcontractor Costs | 54,145.90 |
| Standby Equipment | 148,992.05 |
| Right-of-Way Compaction | 4,264.20 |

**Contracting Officer's Final Decision**

**Contractor's Claim (dated September 18, 2003)**

**Contract No. 00009368**

**Rebuild of the Santiam-Bethel Tap Double Circuit 230kV Transmission Line**

## I. BACKGROUND AND CHRONOLOGY

On April 29, 2002, the Bonneville Power Administration (BPA) awarded Contract Number 00009368 to Mustang Line Contractors, Inc. (hereafter referred to as Mustang or the Contractor), in the amount of $4,182,675.57; to remove approximately seventeen miles of single circuit 230kV transmission line, and replace it with a new Double Circuit 230kV transmission line.

On August 28, 2002, the Contracting Officer issued Contract Amendment Number 8; an unpriced change order directing Mustang to replace defective (BPA furnished) welded steel members and to stop all conductor stringing operations until all defective steel component members were replaced.

On September 3, 2002, Mustang submitted (Serial Letter Number 78) a proposal for Amendment Number 8, totaling $571,462.75. In this proposal, Mustang also requested a 30-day time extension and a change in work hours to six 12-hour days per week. Mustang's proposal was itemized as follows:

| | |
|---|---|
| Time and Materials to Date | $ 55,948.25 |
| Direct Costs for Steel Replacement | 206,686.78 |
| Extended Field Office Overhead | 101,425.57 |
| Environmental Subcontractor Costs | 54,145.90 |
| Standby Equipment | 148,992.05 |
| Right-of-Way Compaction | 4,264.20 |

On September 17, 2002, BPA and Mustang met to discuss settlement of Amendment 8. The following summarizes this meeting:

1. Time Extension and Working Hours: BPA agreed to the proposed six 12-hour days per week. BPA agreed to a 14-day time extension, and promised to consider additional time extension (as necessary) if Mustang worked diligently.

Resolved by 22-day time ext thru Oct 25, 02

2. Direct Costs: Both parties agreed to handle direct costs in two amendments; separating work already completed to date (August 27-30, 2002, Mustang Work Orders 11-17) from the remaining work required to complete the Amendment 8 Change Order. Both parties agreed to the amount of $200,096.33 for the remaining work. Mustang provided details for the work completed to date (Work Orders 11-17) and agreed to provide back-up data to BPA auditors.

Resolved

3. Indirect Costs: BPA agreed to pay additional costs incurred by Mustang, depending on the actual completion date and subject to BPA audit. Costs would be for the actual extended time period, and would include overhead, standby equipment, and other allocable and allowable additional expenses related to environmental restoration, compaction of soils, and bad weather.

Mustang's Serial Letters 85 and 86 (referred to below) were a result of the September 17, 2002 meeting.

On September 19, 2002, Mustang submitted (Serial Letter Number 85) a revised proposal for the Direct Costs for Steel Replacement in the amount of $200,096.33. This amount resulted from agreements reached at the negotiations two days earlier.

On September 19, 2002, Mustang submitted (Serial Letter Number 86) a price proposal for the Time and Materials to Date (August 27-30, 2002, Mustang Work Orders 11-17) in the amount of $53,685.32.

On September 24, 2002, the Contracting Officer issued (bilateral) Contract Amendment Number 11 in the amount of $200,096.33, for the Direct Costs for Steel Replacement. This amendment also included a 14-day time extension, from October 3, 2002 (previous Contract Completion Date) through October 17, 2002.

On October 25, 2002, contract work was substantially completed.

On October 30, 2002, the Contracting Officer issued (bilateral) Contract Amendment Number 13, extending the contract 8 days from October 17, 2002 to the actual Substantial Completion Date of October 25, 2002. (Note: Amendment Nos. 11 and 13 collectively extended the contract duration by 22 calendar days.)

On December 19, 2002, BPA and Mustang met to discuss all outstanding issues, including settlement of the Amendment Number 8 Change Order. The meeting is summarized as follows (relating to this claim):

1. BPA's position on Extended Field Office Overhead and Standby Equipment (resulting from preliminary technical and audit review) was provided to Mustang. BPA's position was based on allowable and allocable actual costs, resulting from bilateral time extensions (Amendment Nos. 11 and 13) and the October 25, 2002 Substantial Completion Date.
2. For settlement purposes, both parties agreed to include 50% of Mustang's proposed direct costs for salaried foremen in the various work orders, even though these foremen are also included in full in Extended Field Office Overhead. (Note: Other work orders not currently in dispute were settled on this basis. However, for Work Orders 56 and 57, Mustang's current claim is based on 100% payment as direct costs in addition to full payment as extended overhead.)
3. Brock Maslonka (Mustang) orally revised the Right-of-Way Compaction to $2,192.00, since the actual weather was better than anticipated at the time Mustang prepared its proposal.

4. Brock Maslonka insisted on receiving 30 days of Extended Field Office Overhead and Standby Equipment (Mustang's originally-proposed time extension) even though he acknowledged that the work was actually extended 22 days. BPA's stated position was that Extended Field Office Overhead and Standby Equipment are to be based on the actual extended contract duration of 22 days.
5. Initiation of discussions toward bilateral agreement to a bottom-line settlement for all unresolved issues under this contract. Several offers and counteroffers were made; however, an agreement was not reached.

On March 5, 2003, the Contracting Officer issued (bilateral) Contract Amendment Number 21, in the amount of $49,822.00, for the Time and Materials to Date (August 27-30, 2002, Mustang Work Orders 11-17).

On May 9, 2003, BPA offered (by letter) a "best and final offer" to settle all remaining unresolved issues. Attached to this letter was a proposed contract amendment that included a final contract amount and release of claims language.

On May 19, 2003, Mustang's parent company, Quanta Services, responded to BPA's settlement offer with counterproposals. However, a settlement was not reached.

On July 28, 2003, BPA completed an audit review of Mustang's Extended Field Office Overhead Costs (report attached as Enclosure 1). The BPA auditor recommended accepting $71,995 of the $101,425.57 proposed by Mustang. A copy of this audit was sent to Mustang on September 2, 2003.

On July 28, 2003, BPA completed an audit review of Mustang's Standby Equipment Costs (report attached as Enclosure 2). The BPA auditor recommended accepting $49,986 of the $148,992.05 proposed by Mustang. A copy of this audit was sent to Mustang on September 2, 2003.

On July 29, 2003, BPA completed an audit review of Mustang's Environmental Subcontractor Costs (report attached as Enclosure 3). The BPA auditor recommended accepting $3,516 of the $54,145.90 proposed by Mustang. A copy of this audit was sent to Mustang on September 2, 2003.

On September 15, 2003, BPA offered (by letter) a second final settlement for all remaining unresolved issues. In addition to a proposed contract amendment, BPA included its position (dollar amounts) on each item and calculation sheets for Work Orders 56 and 57 (BPA audit of these two work orders was not yet completed).

On September 18, 2003, Mustang (by Serial Letter Number 119) rejected BPA's settlement offer and submitted a formal claim in the amount of $369,693.28, for the unresolved Amendment Number 8 items (Extended Field Office Overhead, Environmental Subcontractor, Standby Equipment, and Right-of-Way Compaction), and for two unresolved Mustang Work Orders (WO#56 and WO#57). Mustang's Claim is itemized as follows:

| | |
|---|---|
| WO#56 – Picking Up/Delivering Steel and other work | $ 31,050.84 |
| WO#57 – Steel Extra Work, Structures 17/3 – 2/5 | 29,814.72 |
| Extended Field Office Overhead | 101,425.57 |
| Environmental Subcontractor | 54,145.90 |
| Standby Equipment | 148,992.05 |
| Right-of-Way Compaction | 4,264.20 |

On October 27, 2003, BPA completed an audit review of Mustang's Work Order No. 57 (report attached as Enclosure 4). The BPA auditor recommended accepting $18,363 of the $29,814.72 proposed by Mustang.

On October 29, 2003, BPA completed an audit review of Mustang's Work Order No. 56 (report attached as Enclosure 5). The BPA auditor recommended accepting $6,422 of the $31,050.84 proposed by Mustang.

## II. DISCUSSION

The amount of equitable adjustment due to the Contractor is based on: (a) The allowable dollar amounts recommended by BPA audit (all items were audited except Right-of-Way Compaction); and (b) The revised amount of $2,192 for Right-of-Way Compaction as stated by Mustang at the meeting on December 19, 2002.

The BPA audit reports (Enclosures 1 through 5) are summarized as follows:

1. Extended Field Office Overhead: (Except Equip is in #3) The Contractors' proposal is based on a proposed thirty-day time extension. The recommended amount for payment is based on twenty-two days of actual performance beyond the previous completion date. The project was substantially completed on October 25, 2002. Before Amendment Number 8, the project completion date was October 3, 2002. Therefore, payment for twenty-two days covers all additional overhead costs for all project delays, even including any contractor-caused delays. This payment is for salary, benefits, and subsistence for eight on-site personnel (foremen are listed as "superintendent"), and rent, utilities, and communications for the field office. (Note: Equipment is included in the separate proposal for Standby Equipment Costs.)
2. Environmental Subcontractor Costs: The Contractor's proposed amount is based on computing an average cost per week using original contract costs and original contract duration, and by then applying this average cost per week to a proposed thirty-day time extension. The recommended amount for payment is based on twenty-two days of actual performance beyond the previous contract completion date, and the specific work performed. After review of daily reports, a considerable amount of work (during the extended period) by Mustang's Environmental Subcontractor was determined to be either: (a) Not related to environmental work and not resulting from the time extension, or (b) Work performed under the terms and conditions of the Land Liaison

original contract. Mustang's method of applying original contract costs and original contract duration to the extended period fails to consider that a large portion of the environmental work was up-front, one-time work not impacted by an increase in contract duration. Although requested to do so, Mustang did not provide to BPA a list or breakdown of actual additional environmental costs.

Actual ending date (following Spring) for Env. Sub work was not delayed.

3. Standby Equipment Costs: Mustang's proposal did not differentiate between owned and leased equipment and was based on the incorrect assumption that all pieces of equipment would be on site for thirty additional days. The recommended amount for payment is based on (a) equipment needed to be on site during the twenty-two days of actual performance beyond the previous completion date, and (b) the contract limitation of 40 hours per week for standby of owned equipment.

CRG - valid because standby costs per month are divided by 176 hrs/month to get the hourly rates -

4. Work Order Number 56: Disallowed costs include: (a) 50% of steel shakeout costs considered to be covered under the original contract; (b) direct costs for salaried foremen whose total time on the project is already being paid for in full by the original contract amount and Extended Field Office Overhead, (c) subcontract activity billed as Mustang labor and already paid under Amendment 15; and (d) costs already paid under Amendment 11.

5. Work Order Number 57: Disallowed costs include: (a) duplicated Work Order 56 costs; (b) direct costs for salaried foremen whose total time on the project is already being paid for in full by the original contract amount and Extended Field Office Overhead, (c) costs already paid under other amendments; (d) proposed labor hours and rates not reflected in payroll records; and (e) costs inadequately documented.

## III. DECISION

Based on the facts and conclusions outlined in this Contracting Officer's Final Decision, Mustang Line Contractors is entitled to $152,474.00 in equitable adjustment for the following:

| | | |
|---|---|---|
| WO#56 – Picking Up/Delivering Steel and other work | $ | 6,422 |
| WO#57 – Steel Extra Work, Structures 17/3 – 2/5 | | 18,363 |
| Extended Field Office Overhead | | 71,995 |
| Environmental Subcontractor | | 3,516 |
| Standby Equipment | | 49,986 |
| Right-of-Way Compaction | | 2,192 |

This Contracting Officer's Final Decision additionally includes a final disposition of Mustang's reimbursement for (a) BPA-Furnished Materials Lost, Wasted, and Damaged by Mustang (as provided for in Technical Specification paragraphs 01.02.04 I.2 and 08.01.09 F.2.b), and (b) BPA Inspector Weekend Overtime costs (as provided for in Contract Clause "WORKING HOURS [24-51]").

LWDs not in dispute

The amount due to BPA, for Materials Lost, Wasted, and Damaged, is $2,640. On June 17, 2003, BPA by letter (Enclosure 6) forwarded to Mustang a spreadsheet that shows how the amount of this reimbursement was determined. On June 26, 2003, Mustang (Serial Letter Number 118) agreed with this amount.

Inspector OT reimbursement (Not in dispute)

The amount due to BPA, for BPA Inspector Weekend Overtime costs, is $20,503. BPA also included in its June 17, 2003 letter, a spreadsheet that shows how this amount was determined. Mustang, in its June 26, 2003 letter, disagreed with this amount. Although BPA incurred higher Inspection costs, the above amount of reimbursement is solely for the time frame prior to the issuance of Amendment 8. Additionally, each week, Mustang requested and BPA approved the overtime with the mutual understanding that Mustang would reimburse BPA in accordance with the Working Hours clause.

Therefore, as a result of these final decisions, Contract Amendment Number 23 shall be issued as follows:

| | | |
|---|---|---|
| WO#56 – Picking Up/Delivering Steel and other work | $ | 6,422 |
| WO#57 – Steel Extra Work, Structures 17/3 – 2/5 | | 18,363 |

| | | |
|---|---|---|
| Extended Field Office Overhead | 71,995 | |
| Environmental Subcontractor | 3,516 | |
| Standby Equipment | 49,986 | Disputed |
| Right-of-Way Compaction | 2,192 | 152474 |
| Material Lost, Wasted, and Damaged | Not disputed (-2,640) | |
| Inspector Weekend Overtime Costs | (-20,503) | |

**Contract Amendment 23 Total $ 129,331**

The total contract price therefore increases by $129,331.00 from $4,589,046.80 to $4,718,377.80.

This is the final decision of the Contracting Officer. You may submit this decision to one of the following disputes resolution processes. If you decide to submit this decision to such processes, you must, within the time frames specified below, file the request to do so with the appropriate body. A copy of that request shall simultaneously be sent to the Contracting Officer that issued the decision.

(1) Within 90 days from the date of receipt of such decision the Contractor or Contracting Officer initiates disputes resolution processes described in Subchapter IV of the Administrative Disputes Resolution Act of 1990 (P. Law 101-552, 104 Stat. 2736) with the Fresno Office of the American Arbitration Association at the address,

American Arbitration Association
6795 North Palm Avenue, Second Floor
Fresno, CA 93704

Whose telephone number is (877) 528-0880; or

(2) Within 90 days from the date of receipt of such decision the Contractor appeals the decision to the US Department of Energy, Board of Contract Appeals at either its postal or courier address.

US Postal Service (USPS) mailing address:

US Department of Energy
Board of Contract Appeals
HG-50, Building 950
Washington, DC 20585-0116

Courier and other than USPS address:

US Department of Energy
Board of Contract Appeals
950 L'Enfant Plaza SW
Washington, DC 20024

Whose telephone number is (202) 426-9316 and facsimile (202) 426-0215, (a copy of the Board's rules of procedures is attached); or

(3) Within 12 months from the date of receipt of such decision the Contractor brings an action thereon in the United States Court of Federal Claims.

Glenn A. Nishida
Contracting Officer
Date: November 6, 2003

# MEMORANDUM

Via email

**TO:** Glen Nishida

**CC:**

**FROM:** Norm Smith

**DATE:** January 16, 2004

**RE:** Outstanding Issues

Glen:

You can consider this an "unofficial" communication.

I've had a chance to talk to Brock. His feelings are that further negotiations are a waste of time and that we should turn the whole thing over to the lawyers. However, he would be willing to get together face-to-face with you in attempt to reach an agreement. He regards this as a good faith effort to settle without litigation, a courtesy to you, and just plain good business. Let us know what your schedule looks like. Please call.

I've gone through the audit materials. My comments/observations are included below.

1. **Extended field overhead.** Our original Proposal amount was about $104K. Using actual costs, and your auditors 22 day allocation formula, (which I do not necessarily agree with) I come up with a little over $101K. The attached worksheet ***(Extended Field Overhead.xls)*** shows my calculations. I've got backup for all the costs in the worksheet.

2. **Environmental Subcontractor Costs.** I've reviewed Big Dog's Daily Reports to Inspector forms and I disagree with your auditor's evaluation of the work Big Dog performed during the 22-day extension period. The audit report relies on "the COTR's opinion" of the work performed. No backup or supporting calculations are given for either Estimated Hours or the Estimated ODC Rate.

   The graph in the attached worksheet ***(Big Dog Pay Estimates.xls)*** shows that cumulative costs grew at a fairly consistent rate until 11/08/02, where they leveled off. I believe the chart in the worksheet gives compelling visual evidence that costs within the contract extension period were comparable to costs prior to the contract extension. The chart also shows an estimated "pro forma" of what our costs would have been without the extension.

3. **Work Orders 56 and 57.** One major issue here is the total exclusion of Ron Barnett because he was salaried rather than hourly. This appears to be a major change from BPA's former position of at least partial inclusion of salaried working foremen.

We have prepared working papers that include daily time cards, Certified Payroll Reports, contemporaneous field notes, and field exception reports which were submitted to BPA inspectors on a daily basis. All work papers are reconciled to time cards and Certified Payroll Reports.

**4.** **Standby Equipment.** Your auditor disagrees with our formula; but this was the methodology Shantini directed us to use when calculating equipment rates. Specifically, 250 hours per month to reflect our work schedule.

Per the audit report, "The BPA inspectors provided a summary of their notes showing the last date equipment was used, or could be used…and removed it from standby status when it was ***eligible to be removed*** (emphasis added) from the job site." Given the problems encountered during this project and the uncertainty of what additional activities BPA might ask us to perform (i.e., possible removal of previously installed foundations and/or steel tower members due to steel problems. Example: Field Request for 113DS tower excavation on September 27, 2002), the inspectors could not possibly make an informed day-to-day judgment of our equipment requirements during this period. What they did do is play "Monday Morning Cornerback," by "scheduling" our equipment for us after the job was completed.

**5.** **Right of Way Compaction.** This is not a significant issue.

# *Mustang Line Contractors, Inc.*
## Contract 9368 - Rebuild of the Santiam-Bethel Tap
## Extended Field Overhead - Months of October, 2002

| 1 Direct Payroll Costs | | Total Cost | Work Days | Days Worked | Factor | Cost Claimed |
|---|---|---|---|---|---|---|
| Week Ending FRIDAY | 10/4/2002 | 20,585.10 | 6 | 4 | 67% | 13,723.40 |
| Week Ending FRIDAY | 10/11/2002 | 20,940.12 | 6 | 6 | 100% | 20,940.12 |
| Week Ending FRIDAY | 10/18/2002 | 20,037.61 | 6 | 6 | 100% | 20,037.61 |
| Week Ending FRIDAY | 10/25/2002 | 20,484.45 | 6 | 6 | 100% | 20,484.45 |
| Total Direct Payroll Costs | | | | 22 | | 75,185.58 |

| 2 Monthly Payroll Costs | Total Cost | Days in Oct | Work Days | Factor | Cost Claimed |
|---|---|---|---|---|---|
| | 10,781.65 | 31 | 22 | 71% | 7,651.49 |
| Total Monthly Payroll Costs | | | 22 | | 7,651.49 |

| 3 Accounts Payable Costs | Total Cost | Days in Oct | Work Days | Factor | Cost Claimed |
|---|---|---|---|---|---|
| | 7,321.49 | 31 | 22 | 71% | 5,195.90 |
| Total Accounts Payable Costs | | | 22 | | 5,195.90 |

| 4 Total costs | | 88,032.97 |
|---|---|---|
| Overhead and Profit | 15% | 13,204.94 |
| Total Costs Claimed | | 101,237.91 |
| | | |
| Amount included in Amendment 23 | | 71,995.00 |

# Mustang Line Contractors, Inc.
## Contract 9368 - Rebuild of the Santiam-Bethel Tap
## Extended Field Overhead - Month of October, 2002

| | | | PAYROLL COSTS | | | | | | | | | A/P COSTS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P/R Week Ending | Employee Name | Job Title | Gross Wages | Fica 7.65% | Suta 5.40% | Futa 0.80% | Workers Comp | 401K Match | Fringes | Meals & Subsistence | Total Payroll | Co. Paid Housing | Company Medical: Medical | Company Medical: Dental | Total A/P | TOTAL |
| 10/4/2002 | Bedient, Richard L | Foundation Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | - | - | 100.00 | 2,069.50 | | | | | 2,069.50 |
| | Barnett, Ronald J. | Steel Supt. | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | 49.00 | - | 100.00 | 1,987.20 | | | | | 1,987.20 |
| | Brendel, Gerald A. | Steel Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | 60.00 | - | 125.00 | 2,154.50 | | | | | 2,154.50 |
| | Dixon, Doug | Wire Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | 72.00 | - | 150.00 | 2,322.80 | | | | | 2,322.80 |
| | Downs, Larry | Gen Site Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | - | - | 250.00 | 2,350.80 | | | | | 2,350.80 |
| | Kusler, Cynthia | Field Secretary | 1,168.78 | 89.41 | 63.11 | 9.35 | 203.95 | - | - | - | 1,534.61 | | | | | 1,534.61 |
| | Milan, Anthony | Safety Officer | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | - | - | - | 1,838.20 | | | | | 1,838.20 |
| | Williams, Charlie | Land Liaison | 1,000.00 | 76.50 | 54.00 | 8.00 | 174.50 | - | - | | 1,313.00 | 158.97 | | | 158.97 | 1,471.97 |
| | Cummings, Glen | Field Mechanic-1 | 1,629.92 | 124.69 | 88.02 | 13.04 | 284.42 | - | 343.96 | | 2,484.04 | | | | | 2,484.04 |
| | Earlscourt, Jim | Field Mechanic-2 | 1,461.31 | 111.79 | 78.91 | 11.69 | 255.00 | | 452.78 | | 2,371.48 | | | | | 2,371.48 |
| | Weekly Total | | | | | | | | | | 20,426.13 | | | | 158.97 | 20,585.10 |
| 10/11/2002 | Bedient, Richard L | Foundation Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | - | - | 150.00 | 2,119.50 | | | | | 2,119.50 |
| | Barnett, Ronald J. | Steel Supt. | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | 49.00 | - | 125.00 | 2,012.20 | | | | | 2,012.20 |
| | Brendel, Gerald A. | Steel Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | 60.00 | - | 175.00 | 2,204.50 | | | | | 2,204.50 |
| | Dixon, Doug | Wire Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | 72.00 | - | 275.00 | 2,447.80 | | | | | 2,447.80 |
| | Downs, Larry | Gen Site Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | - | - | 250.00 | 2,350.80 | | | | | 2,350.80 |
| | Kusler, Cynthia | Field Secretary | 723.75 | 55.37 | 39.08 | 5.79 | 126.29 | - | - | - | 950.28 | | | | | 950.28 |
| | Brendel, Linda | Field Secretary | 264.00 | 20.20 | 14.26 | 2.11 | 46.07 | - | - | - | 346.63 | | | | | 346.63 |
| | Milan, Anthony | Safety Officer | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | - | - | - | 1,838.20 | | | | | 1,838.20 |
| | Williams, Charlie | Land Liaison | 1,000.00 | 76.50 | 54.00 | 8.00 | 174.50 | - | - | | 1,313.00 | 158.97 | | | 158.97 | 1,471.97 |
| | Cummings, Glen | Field Mechanic-1 | 1,830.76 | 140.05 | 98.86 | 14.65 | 319.47 | | 377.73 | | 2,781.52 | | | | | 2,781.52 |
| | Earlscourt, Jim | Field Mechanic-2 | 1,494.77 | 114.35 | 80.72 | 11.96 | 260.84 | | 454.08 | | 2,416.71 | | | | | 2,416.71 |
| | Weekly Total | | | | | | | | | | 20,781.15 | | | | 158.97 | 20,940.12 |
| 10/18/2002 | Bedient, Richard L | Foundation Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | - | - | 150.00 | 2,119.50 | | | | | 2,119.50 |
| | Barnett, Ronald J. | Steel Supt. | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | 49.00 | - | 100.00 | 1,987.20 | | | | | 1,987.20 |
| | Brendel, Gerald A. | Steel Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | 60.00 | - | 150.00 | 2,179.50 | | | | | 2,179.50 |
| | Dixon, Doug | Wire Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | 72.00 | - | 250.00 | 2,422.80 | | | | | 2,422.80 |
| | Downs, Larry | Gen Site Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | - | - | 250.00 | 2,350.80 | | | | | 2,350.80 |
| | Kusler, Cynthia | Field Secretary | 915.00 | 70.00 | 49.41 | 7.32 | 159.67 | - | - | - | 1,201.40 | | | | | 1,201.40 |
| | Brendel, Linda | Field Secretary | 126.00 | 9.64 | 6.80 | 1.01 | 21.99 | - | - | - | 165.44 | | | | | 165.44 |
| | Milan, Anthony | Safety Officer | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | - | - | - | 1,838.20 | | | | | 1,838.20 |
| | Williams, Charlie | Land Liaison | 1,000.00 | 76.50 | 54.00 | 8.00 | 174.50 | - | - | | 1,313.00 | 158.97 | | | 158.97 | 1,471.97 |
| | Cummings, Glen | Field Mechanic-1 | 1,469.60 | 112.42 | 79.36 | 11.76 | 256.45 | | 316.77 | | 2,246.35 | | | | | 2,246.35 |
| | Earlscourt, Jim | Field Mechanic-2 | 1,277.25 | 97.71 | 68.97 | 10.22 | 222.88 | | 377.42 | | 2,054.45 | | | | | 2,054.45 |
| | Weekly Total | | | | | | | | | | 19,878.64 | | | | 158.97 | 20,037.61 |
| 10/25/2002 | Bedient, Richard L | Foundation Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | - | - | 125.00 | 2,094.50 | | | | | 2,094.50 |
| | Barnett, Ronald J. | Steel Supt. | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | 49.00 | - | 100.00 | 1,987.20 | | | | | 1,987.20 |
| | Brendel, Gerald A. | Steel Supt. | 1,500.00 | 114.75 | 81.00 | 12.00 | 261.75 | 60.00 | - | 150.00 | 2,179.50 | | | | | 2,179.50 |
| | Dixon, Doug | Wire Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | 72.00 | - | 225.00 | 2,397.80 | | | | | 2,397.80 |
| | Downs, Larry | Gen Site Supt | 1,600.00 | 122.40 | 86.40 | 12.80 | 279.20 | - | - | 200.00 | 2,300.80 | | | | | 2,300.80 |
| | Kusler, Cynthia | Field Secretary | 1,005.00 | 76.88 | 54.27 | 8.04 | 175.37 | - | - | - | 1,319.57 | | | | | 1,319.57 |
| | Milan, Anthony | Safety Officer | 1,400.00 | 107.10 | 75.60 | 11.20 | 244.30 | - | - | - | 1,838.20 | | | | | 1,838.20 |
| | Williams, Charlie | Land Liaison | 1,000.00 | 76.50 | 54.00 | 8.00 | 174.50 | - | - | | 1,313.00 | 158.97 | | | 158.97 | 1,471.97 |
| | Cummings, Glen | Field Mechanic-1 | 1,629.92 | 124.69 | 88.02 | 13.04 | 284.42 | | 343.96 | | 2,484.04 | | | | | 2,484.04 |
| | Earlscourt, Jim | Field Mechanic-2 | 1,491.31 | 114.09 | 80.53 | 11.93 | 260.23 | | 452.78 | | 2,410.87 | | | | | 2,410.87 |

**Mustang Line Contractors, Inc.**
**Contract 9368 - Rebuild of the Santiam-Bethel Tap**
**Extended Field Overhead - Month of October, 2002**

| PAYROLL COSTS | | | | | | | | | | | | A/P COSTS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P/R Week Ending | Employee Name | Job Title | Gross Wages | Fica 7.65% | Suta 5.40% | Futa 0.80% | Workers Comp | 401K Match | Fringes | Meals & Subsistence | Total Payroll | Co. Paid Housing | Company Medical: Medical | Company Medical: Dental | Total A/P | TOTAL |
| | Weekly Total | | | | | | | | | | 20,325.48 | | | | 158.97 | 20,484.45 |

# Mustang Line Contractors, Inc.
## Contract 9368 - Rebuild of the Santiam-Bethel Tap
## Extended Field Overhead - Month of October, 2002

| | | | PAYROLL COSTS | | | | | | | | | A/P COSTS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Company Medical | | | |
| P/R Week Ending | Employee Name | Job Title | Gross Wages | Fica 7.65% | Suta 5.40% | Futa 0.80% | Workers Comp | 401K Match | Fringes | Meals & Subsistence | Total Payroll | Co. Paid Housing | Medical | Dental | Total A/P | TOTAL |
| Monthly | Bedient, Richard L | Foundation Supt. | | | | | | | | | - | 1,000.00 | 504.16 | 47.37 | 1,551.53 | 1,551.53 |
| | Barnett, Ronald J. | Steel Supt. | | | | | | | | | - | 350.00 | 664.01 | 69.19 | 1,083.20 | 1,083.20 |
| | Brendel, Gerald A. | Steel Supt. | | | | | | | | | - | 1,650.00 | 504.16 | 47.37 | 2,201.53 | 2,201.53 |
| | Dixon, Doug | Wire Supt | | | | | | | | | - | 350.00 | 664.01 | 69.19 | 1,083.20 | 1,083.20 |
| | Downs, Larry | Gen Site Supt | | | | | | | | | - | 323.65 | 664.01 | 69.19 | 1,056.85 | 1,056.85 |
| | Kusler, Cynthia | Field Secretary | | | | | | | | | - | 2,027.09 | 504.16 | 47.37 | 2,578.62 | 2,57[illegible] |
| | Milan, Anthony | Safety Officer | | | | | | | | | - | 690.00 | 245.93 | 22.43 | 958.36 | 95[illegible] |
| | Williams, Charlie | Land Liaison | | | | | | | | | - | | | | - | |
| | Cummings, Glen | Field Mechanic-1 | | | | | | | | | - | | | | - | |
| | Earlscourt, Jim | Field Mechanic-2 | | | | | | | | | - | | 245.93 | 22.43 | 268.36 | 268.36 |
| | Weekly Total | | | | | | | | | | - | | | | 10,781.65 | 10,781.65 |

Notes:

(1) Company Paid Housing

| Name | Amount | Source |
|---|---|---|
| Bedient, Richard L | 1,000.00 | ZWN Services |
| Barnett, Ronald J. | 350.00 | Eola Bend RV |
| Brendel, Gerald A. | 1,650.00 | Residence Inn |
| Dixon, Doug | 350.00 | Phoenix RV |
| Kusler, Cyndy | 2,027.09 | Residence Inn |
| Downs, Larry | 275.00 | Starlite Mobile Village |
| Downs, Larry | 48.65 | PG&E Electric |
| Milan, Anthony | 690.00 | Direct Reimbursement |
| Williams, Charlie | 158.97 | Crossland Economy Studios |

(2) 401K Match 100% of first 3% of earnings. 50% of next 3% of earnings.

| Name | Weekly Deduction |
|---|---|
| Bedient, Richard L | - |
| Barnett, Ronald J. | 56.00 |
| Brendel, Gerald A. | 75.00 |
| Dixon, Doug | 160.00 |
| Downs, Larry | - |
| Kusler, Cynthia | - |

***MUSTANG LINE CONTRACTORS, INC.***
***Contract 9368 - Rebuild of the Santiam-Bethel Tap***
***EXTENDED FIELD OVERHEAD - VENDORS AND SUPPLIERS***

| VENDOR | DATE | INVOICE NO | DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| Airpac-Norgas | 10/31/02 | 101547211 | Oxy & Acetylene Tank Rental | 38.00 |
| Airpac-Norgas | 10/31/02 | 107487860 | Oxy & Acetylene Tank Rental | 41.17 |
| River Resources, Inc | 10/01/02 | 00000046 | Oct 2002 Yard Rent | 100.00 |
| Jack Hills | 10/01/02 | 102002 | Oct 2002 Ofice Rent | 4,000.00 |
| PG&E Portland | 10/01/02 | 1102 00363 | Oct Office Electricity | 365.15 |
| AT&T Wireless | 11/14/02 | 11032002 | 10/02-11/01 Billing | 1,450.13 |
| Qwest | 11/07/00 | 5035817699 | Oct Landline Billing | 127.18 |
| UPS | 10/05/02 | 9873EX402 | Shipping | 45.60 |
| UPS | 10/05/02 | 9873EX412 | Shipping | 108.51 |
| UPS | 10/05/02 | 9873EX422 | Shipping | 63.05 |
| UPS | 10/05/02 | 9873EX432 | Shipping | 48.26 |
| Honey Buckets | 10/02/02 | 903644 | 10/02-11/01 Portable Toilet Rental | 149.00 |
| Ace Septic & Excavating | 10/31/02 | 11004 | October Chemical Toilet Rent | 131.02 |
| Pacific Power | 11/04/02 | 18693154 1 | October Yard Electric | 17.27 |
| Santiam Santitary Service | 10/31/02 | 2699735 10 | Oct 6-yd container disposal | 276.30 |
| Santiam Santitary Service | 10/31/02 | 2704918 10 | October Waste Disposal | 360.85 |
| Total | | | | 7,321.49 |


Mustang Line Contractors
Big Dog Subcontractor Payments
Cumulative
Pro Forma
Payments
Contract Extension
Amount
$350,000
$300,000
$250,000
$200,000
$150,000
$100,000
$50,000
$0
Date
4/22/2002
5/22/2002
6/22/2002
7/22/2002
8/22/2002
9/22/2002
10/22/2002
11/22/2002
12/22/2002
1/22/2003
2/22/2003
3/22/2003
4/22/2003
5/22/2003
6/22/2003
7/22/2003
8/22/2003
9/22/2003

Big Dog Enterprises
BPA Santiam-Bethel

| | Estimate 16 Job-to-Date 8/30/2002 | Estimate 17 9/6/2002 | Estimate 18 9/13/2002 | Estimate 19 9/20/2002 | Estimate 20 9/27/2002 | Estimate 21 10/4/2002 | Estimate 22 10/11/2002 |
|---|---|---|---|---|---|---|---|
| Advances | 15,000.00 | | | | | | |
| Wages: Cindy, Ken, Danyel and Chris | 100,707.90 | 4,435.04 | 3,887.66 | 6,385.25 | 5,665.84 | 6,149.92 | 3,995.77 |
| Payroll taxes & Insurance, Liability Ins. | 21,022.61 | | 7,140.52 | | | | 3,917.28 |
| Chris's expenses | 966.54 | | | | | | |
| Safety vests, hard hats, etc | 94.75 | | | | | | |
| Supplies ( wood stakes, caution tape, etc.) | 1,834.32 | | | 3,236.28 | 230.65 | 16.45 | 254.03 |
| Printing/Office Supplies | 487.95 | 5.99 | 8.99 | | | | 26.47 |
| Fencing/safety/silt | 7,006.22 | 753.24 | | | | | |
| Hydroseeding | - | | | | | | |
| WADOT classes | 500.00 | | | | | | |
| Hotel | 1,608.50 | 243.00 | | | 266.25 | | |
| Airfare | 386.50 | | | | | | |
| Equip Rental | 2,398.68 | 1,140.00 | 80.00 | 55.00 | 92.10 | | |
| Fuel | 2,253.26 | 249.53 | 288.25 | 185.86 | | 202.93 | 229.93 |
| Payments to Landowners | - | | | | | | |
| Total | 154,267.23 | 6,826.80 | 11,405.42 | 9,862.39 | 6,254.84 | 6,369.30 | 8,423.48 |
| Plus markup 10% | 13,926.72 | 682.68 | 1,140.54 | 986.24 | 625.48 | 636.93 | 842.35 |
| Equip Rental - W/O Markup | 7,000.00 | | | | 2,000.00 | - | - |
| Subtotal | 175,193.95 | 7,509.48 | 12,545.96 | 10,848.63 | 8,880.32 | 7,006.23 | 9,265.83 |
| Less retainage 10% | (16,019.40) | (750.95) | (1,254.60) | (1,084.86) | (888.03) | (700.62) | (926.58) |
| Net Payment | 159,174.55 | 6,758.53 | 11,291.37 | 9,763.77 | 7,992.29 | 6,305.61 | 8,339.25 |
| Date Paid | | 9/9/2002 | 9/19/2002 | 9/24/2002 | 10/2/2002 | 10/8/2002 | 10/16/2002 |
| Check Number | | 16321 | 16372 | 16378 | 16401 | 16440 | 16508 |

## RECAP - BPA SANTIAM-BETHEL- BIG DOG ENTERPRISES SUBCONTRACT EXPENSE

| No. | Date | Advance | Expenses | Markup | BD Equip | Landowners | Subtotal | Retainage | Net | Chk No | Chk Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adv 1 | 04/22/02 | 5,000.00 | | | | | 5,000.00 | | 5,000.00 | 15234 | 04/22/02 |
| Adv 2 | 05/02/02 | 5,000.00 | | | | | 5,000.00 | | 5,000.00 | 15345 | 05/03/02 |
| Est 01 | 05/19/02 | | 8,590.63 | 859.06 | - | - | 9,449.69 | (944.97) | 8,504.72 | 15416 | 05/21/02 |
| Est 01A | 05/28/02 | | 516.69 | 51.67 | - | - | 568.36 | (56.84) | 511.52 | 15459 | 05/29/02 |
| Est 02 | 05/28/02 | | 8,317.65 | 831.77 | | | 9,149.42 | (914.94) | 8,234.48 | 15459 | 05/29/02 |
| Adv 3 | 06/02/02 | 5,000.00 | | | | | 5,000.00 | | 5,000.00 | 15533 | 06/05/02 |
| Est 03 | 06/02/02 | | 5,309.01 | 530.90 | | | 5,839.91 | (583.99) | 5,255.92 | 15533 | 06/05/02 |
| Est 04 | 06/09/02 | | 6,235.84 | 623.58 | | | 6,859.42 | (685.94) | 6,173.48 | 15564 | 06/12/02 |
| Est 05 | 06/16/02 | | 11,413.03 | 1,141.30 | | | 12,554.33 | (1,255.43) | 11,298.90 | 15689 | 06/22/02 |
| Est 06 | 06/21/02 | | 13,575.03 | 1,357.50 | | | 14,932.53 | (1,493.25) | 13,439.28 | 15717 | 06/24/02 |
| Est 07 | 07/01/02 | | 9,540.55 | 954.06 | | | 10,494.61 | (1,049.46) | 9,445.15 | 15766 | 07/01/02 |
| Est 08 | 07/12/02 | | 14,792.07 | 1,479.21 | | | 16,271.28 | (1,627.13) | 14,644.15 | 15777 | 07/08/02 |
| Est 09 | 07/12/02 | | 5,885.52 | 588.55 | | | 6,474.07 | (647.41) | 5,826.66 | 15848 | 07/17/02 |
| Est 10 | 07/18/02 | | 7,024.64 | 702.46 | | | 7,727.10 | (772.71) | 6,954.39 | 16027 | 07/24/02 |
| Est 11 | 07/28/02 | | 10,048.47 | 1,004.85 | | | 11,053.32 | (1,105.33) | 9,947.99 | 16050 | 07/31/02 |
| Est 12 | 08/04/02 | | 2,784.87 | 278.49 | 4,800.00 | | 7,863.36 | (786.34) | 7,077.02 | 16086 | 08/07/02 |
| Est 13 | 08/12/02 | | 14,032.09 | 1,403.21 | | | 15,435.30 | (1,543.53) | 13,891.77 | 16146 | 08/13/02 |
| Est 14 | 08/17/02 | | 8,588.88 | 858.89 | | | 9,447.77 | (944.78) | 8,502.99 | 16190 | 08/21/02 |
| Est 15 | 08/23/02 | | 8,215.74 | 821.57 | | | 9,037.31 | (903.73) | 8,133.58 | 16231 | 08/26/02 |
| Est 16 | 09/03/02 | | 4,396.52 | 439.65 | 2,200.00 | | 7,036.17 | (703.62) | 6,332.55 | 16281 | 09/03/02 |
| Est 17 | 09/06/02 | | 6,826.80 | 682.68 | | | 7,509.48 | (750.95) | 6,758.53 | 16321 | 09/09/02 |
| Est 18 | 09/19/02 | | 11,405.42 | 1,140.54 | | | 12,545.96 | (1,254.60) | 11,291.36 | 16372 | 09/19/02 |
| Est 19 | 09/23/02 | | 9,862.39 | 986.24 | | | 10,848.63 | (1,084.86) | 9,763.77 | 16378 | 09/24/02 |
| Est 20 | 09/29/02 | | 6,254.84 | 625.48 | 2,000.00 | | 8,880.32 | (888.03) | 7,992.29 | 16401 | 10/02/02 |
| Est 21 | 10/06/02 | | 6,369.30 | 636.93 | | | 7,006.23 | (700.62) | 6,305.61 | 16440 | 10/08/02 |
| Est 22 | 10/13/02 | | 8,423.48 | 842.35 | | | 9,265.83 | (926.58) | 8,339.25 | 16508 | 10/16/02 |
| Est 23 | 10/20/02 | | 4,801.58 | 480.16 | | | 5,281.74 | (528.17) | 4,753.57 | 16540 | 10/23/02 |
| Est 24 | 10/25/02 | | 9,966.23 | 1,271.62 | 2,000.00 | 2,750.00 | 15,987.85 | (1,598.79) | 14,389.06 | 16599 | 10/28/02 |
| Est 25 | 11/01/02 | | 4,135.53 | 413.55 | | - | 4,549.08 | (454.91) | 4,094.17 | 16729 | 11/18/02 |
| Est 26 | 11/08/02 | | 3,317.92 | 56.79 | - | 3,024.15 | 6,398.86 | (639.89) | 5,758.97 | 16851 | 12/06/02 |
| Est 27 | 11/29/02 | | 3,567.27 | 356.73 | | | 3,924.00 | (392.40) | 3,531.60 | 16852 | 12/06/02 |
| Est 28 | 01/10/03 | | 5,530.86 | 553.09 | | | 6,083.95 | (608.40) | 5,475.55 | 17210 | 02/21/03 |
| Est 29 | 01/30/03 | | 1,472.32 | 147.23 | | | 1,619.55 | (161.96) | 1,457.59 | 17211 | 02/21/03 |
| Est 30 | 04/15/03 | | 4,111.98 | 411.20 | 1,000.00 | | 5,523.18 | (552.32) | 4,970.86 | 17759 | 05/01/03 |
| Est 31 | 06/09/03 | | 3,491.48 | 349.15 | | | 3,840.63 | (384.06) | 3,456.57 | 18072 | 06/23/03 |
| Subtotal | | 15,000.00 | 228,804.63 | 22,880.46 | 12,000.00 | 5,774.15 | 284,459.24 | (26,945.94) | 257,513.30 | | |
| Final | 06/10/03 | (15,000.00) | 3,317.92 | 331.79 | | 8,744.14 | (2,606.15) | 26,945.94 | 24,339.79 | 18120 | 06/27/03 |
| SAIF | 10/01/03 | | 5,688.00 | | | | | | 5,688.00 | 18732 | 10/31/03 |
| JOB TOTAL | | - | 237,810.55 | 23,212.25 | 12,000.00 | 14,518.29 | 281,853.09 | - | 287,541.09 | | |

12/1/2004 9:23 AM

Big Dog Pay Estimates.xls Recap

***BIG DOG LANDOWNER PAYMENTS***

| | Mustang | | | Big Dog | | | | |
|---|---|---|---|---|---|---|---|---|
| Name | Amount | Check No | Date Paid | Signature | Signed | Check No | Date Paid | Amount |
| Hafner, Dan-Silver Mtn Farms | 1,350.00 | 16599 | 10/28/02 | Dan Hafner | 10/21/02 | 3095 | 10/21/02 | 1,350.00 |
| Hafner, Dan-Silver Mtn Farms | 150.00 | 16599 | 10/28/02 | Dale Hafner | 01/31/03 | 3170 | 01/31/03 | 150.00 |
| Cusimano, Frederick | 150.00 | 16599 | 10/28/02 | Fred Cusimano | 10/16/02 | 3094 | 10/21/02 | 150.00 |
| Silbernagel, Paul | 300.00 | 16599 | 10/28/02 | Paul Silbernagel | 10/02/02 | 3097 | 10/23/02 | 300.00 |
| Five Oak Farms | 600.00 | 16599 | 10/28/02 | Signed | 10/23/02 | 3096 | 10/23/02 | 600.00 |
| Sandau, Steve | 200.00 | 16599 | 10/28/02 | Steve Sandau | 10/25/02 | 3098 | 10/25/02 | 150.00 |
| Total | 2,750.00 | 16599 | 10/28/02 | Total | | | | 2,700.00 |
| | | | | | | | | |
| G & C Farms | 75.00 | 16851 | 12/6/2002 | Jeffrey Snow | 11/08/02 | 3129 | 11/08/02 | 75.00 |
| Thompson, Tim | 200.00 | 16851 | 12/6/2002 | Tim Thompson | 11/02/02 | 3111 | 10/29/02 | 200.00 |
| Wolf, John and Francis | 1,093.29 | 16851 | 12/6/2002 | Francis R. Wolf | 11/08/02 | 3127 | 11/08/02 | 1,093.29 |
| deVries, Glen | 150.00 | 16851 | 12/6/2002 | Glen Devries | 11/08/02 | 3125 | 11/08/02 | 150.00 |
| Mack, Joe | 75.00 | 16851 | 12/6/2002 | Joe Mack | 11/04/02 | 3122 | 11/04/02 | 75.00 |
| Heuberger, Gerald | 1,275.00 | 16851 | 12/6/2002 | Gerald Heuberger | 11/04/02 | 3121 | 11/14/02 | 1,275.00 |
| Haury, Daryl | 600.00 | 16851 | 12/6/2002 | Daryl Haury | 11/08/02 | 3119 | 11/03/02 | 600.00 |
| Kaser, Jeff | 480.00 | 16851 | 12/6/2002 | Jeff Kaser | 11/04/02 | 3117 | 11/03/02 | 480.00 |
| Lone Oak Farms | 750.00 | 16851 | 12/6/2002 | Harry Ziln | 11/08/02 | 3112 | 11/08/03 | 750.00 |
| Thompson, Tim | 300.00 | 16851 | 12/6/2002 | Tim Thompson | 11/08/02 | 3128 | 11/08/02 | 300.00 |
| Wolf, Eric | 450.00 | 16851 | 12/6/2002 | Eric Wolf | 11/08/02 | 3110 | 10/29/02 | 450.00 |
| Clarence Simmons Farms | 450.00 | 16851 | 12/6/2002 | Clarence Simmons | 11/04/05 | 3102 | 10/29/02 | 450.00 |
| | | | | | | | | |
| Total | 5,898.29 | | | Total | | | | 5,898.29 |
| Paid Big Dog 1/2 | | | | | | | | |
| | | | | | | | | |
| Schmid, Stephen | 550.00 | | | Steve Schmid | 09/01/02 | 3148 | 12/12/02 | 550.00 |
| Satter, Don | 225.00 | | | Mildred Satter | 01/23/02 | 3166 | 01/23/03 | 150.00 |
| Thompson, Michael | 600.00 | | | Michael Thompson | 10/10/02 | 3103 | 10/29/02 | 600.00 |
| Heuberger, Daniel | 300.00 | | | Daniel Heuberger | 12/19/02 | 3104 | 10/29/02 | 300.00 |
| Schumaker, Tom | 225.00 | | | Thomas Schimaker | 12/12/02 | 3149 | 12/12/02 | 225.00 |
| Moll, Keith | 150.00 | | | Tanya Moll | 12/12/02 | 3108 | 10/29/02 | 150.00 |
| Mader, Howard | 225.00 | | | Howard Mader | 12/12/02 | 3146 | 12/12/02 | 225.00 |
| Sherman, Chuck | 180.00 | | | Chuck Sherman | no date | 3116 | 11/03/02 | 180.00 |
| Beitel, Florence | 300.00 | | | Florence Beitel | 12/10/02 | 3118 | 11/03/02 | 300.00 |
| Bruce, Robert | 150.00 | | | Robert Bruce | 12/12/02 | 3105 | 10/29/02 | 150.00 |
| Smith, Bryan | 300.00 | | | Bryan Smith | 01/23/02 | 3167 | 01/23/03 | 300.00 |
| Mader, Don | 375.00 | | | Don Mader | 12/12/02 | 3147 | 12/12/02 | 375.00 |
| Doerfler Farms | 1,500.00 | | | Kent Doerfler | 12/12/02 | 3139 | 12/10/02 | 1,500.00 |
| Pritchard, Robert | 300.00 | | | Robert Prichard | no date | 3163 | 01/17/03 | 300.00 |
| Heritage Seedlings | 415.00 | | | Mark Krautman | 01/24/03 | | | 415.00 |
| Holiday Tree Farm | 150.00 | | | | | | | |
| Thompson, Tim | 200.00 | | | Tim Thompson | 11/02/02 | 3111 | 10/29/02 | 200.00 |
| | 6,145.00 | | | | | | | 5,920.00 |
| | | | | | | | | |
| GRAND TOTAL | 14,793.29 | | | GRAND TOTAL | | | | 14,518.29 |